STATE OF MISSOURI on the Information of ROY McKITTRICK, Attorney General, at the relation of CHARLES W. HAM, Relator, v. DANIEL N. KIRBY, LUTHER ELY SMITH and PAUL J. KAVENEY.—163 S. W. (2d) 990.

Court en Banc, July 25, 1942.

990

*Louis E. Miller* for relator.

994

*Joseph F. Holland,* City Counselor, *George L. Stemmler, Oliver Senti,* and *Albert Miller,* Associate City Counselors of St. Louis and *Charles P. Williams* for respondents.

*Norman Bierman* and *George S. Roudebush amicus curiae.*

HAYS, J.—Information in the nature of quo warranto filed by the Attorney General against the members of the Civil Service Commission of the City of St. Louis. Respondents have answered and relator has demurred to their answer. The proceeding challenges the validity of Amended Article 18 of the Charter of the City of St. Louis, under which amendment a system for the appointment of civil servants of said city is provided. The amendment in question is very long and contains many detailed provisions. It will be unnecessary to set out all of them, but those against which relator's attack is leveled will be referred to in the course of the opinion.

Sec. 22, Art. IX of the Constitution of Missouri, covering the power of amending the St. Louis Charter, provides:

"The charter so ratified may be amended by proposals therefor submitted by the lawmaking authorities of the city to the qualified voters thereof, at a general or special election held at least sixty days after the publication of such proposals and accepted by three-fifths of the qualified voters voting for or against each of said amendments so submitted."

Sec. 13, Art. IV of the Charter of the City of St. Louis provides:

"No bill, except a general appropriation bill, which shall only embrace matters on account of which moneys are appropriated, shall contain more than one subject, which shall be clearly expressed in its title."

The present amendment was proposed by the Board of Aldermen through an ordinance entitled: "An Ordinance submitting a proposed amendment to the Charter of the City of St. Louis to the qualified voters of the city, and providing for an election to be held therefor, and for the manner of voting thereat, and for the publication of this ordinance." Relator contends that this ordinance of submission was invalid because the title did not specify the contents of the proposed amendment. It is not contended that the proposal for amendment as published and as it appeared upon the ballot had an incomplete or misleading title nor that the ordinance itself did not set out the exact amendment proposed. It is said only that the title to the ordinance was improper. We are therefore confronted with the question as to whether the requirements of the charter applying to the titles of ordinary ordinances have any application to the titles of ordinances, resolutions or other legislative actions submitting to the voters a proposed charter amendment.

The procedure under which the Charter of the City of St. Louis is to be amended is in many respects similar to that followed with respect to amendments to the Constitution of this State. The amendment in each case is to be initiated by the ordinary legislative body. In case of the city by the Board of Aldermen, in case of the State by the General Assembly. When so submitted in either case it is to be ratified by the qualified voters. Similar procedure for amend-

1002

ment is found in the constitutions of a large majority of our states. In construing such provisions it has been universally held that the legislature, in proposing an amendment, is not exercising its ordinary legislative power but is acting as a special organ of government for the purpose of constitutional amendment. [State ex rel. v. Hackman, 273 Mo. 670, 202 S. W. 7; Edwards v. Lesueur, 132 Mo. 410, 33 S. W. 1130, 31 L. R. A. 815; People ex rel. v. Ramer (Colo.), 160 Pac. 1032; State v. American Sugar Refining Co. (La.), 68 So. 742; Re Opinion of the Justices (Me.), 107 Atl. 673, 5 A. L. R. 1412.] In the Lesueur case we held that the constitutional requirement applying to ordinary bills that they be read three times before final passage did not apply to a joint and concurrent resolution submitting a constitutional amendment. In Cooney v. Foote (Ga.), 83 S. E. 537, Ann. Cas. 1916B, 1001, it was directly ▮▮▮▮ held that the constitutional requirement in regard to the title of legislative bills had no application to joint and concurrent resolutions submitting constitutional amendments.

In the case of State ex rel. v. Allen, 178 Mo. 555, 77 S. W. 868, we discussed the applicability of certain charter provisions of the Town of Canton applying to ordinary legislation to a proposal submitted by the Board of Town Trustees for a bond issue and we held that since the charter merely provided for the trustees to submit such an issue to the voters they did not have to make the submission by an ordinary ordinance. Similar holdings are to be found in State v. Armstrong, 140 Mo. App. 719, 127 S. W. 93, and Merchant's Union Barb Wire Co. v. C., B. & Q. R., 70 Iowa, 105. It therefore seems clear that the requirements as to the title of ordinances have no effect or bearing upon legislative proposals for the amendment of the Charter of St. Louis. Cases like Young v. Greene County, 342 Mo. 1105, 119 S. W. (2d) 369; State ex rel. Inter-Insurance Auxiliary v. Revelle, 257 Mo. 529, 165 S. W. 1084, and Vice v. Kirksville, 280 Mo. 348, 217 S. W. 77, are not in point since they deal with ordinary legislation and not with constitutional or charter amendments.

▮▮▮▮ The civil service amendment exempts by its terms from its operation certain classes of municipal employees, to-wit: employees of certain commissions and employees of the Board of Aldermen. It is contended by the relator that this discrimination is violative of the equal protection clause of the 14th Amendment to the Constitution of the United States and of certain similar provisions of our State Constitution. From an early date it has been held that the equal protection clause does not require an exactly equal treatment of all citizens, but that the Legislature may create certain classes and may make laws applicable to some but not all of such classes provided that the principle of classification rests upon some real difference "which bears a reasonable and just relation to the act in respect to which the classification is proposed." [Gulf, Colo. & S. F. R. Co. v. Ellis, 165 U. S. 150, 17 Sup. Ct. 255, 41 L. Ed. 666.]. This court, in

a decision which has been cited with approval by the Supreme Court of the United States, laid down the rule of just and reasonable relationship in State v. Loomis, 115 Mo. 307, 22 S. W. 350, 21 L. R. A. 789. In Missouri v. Lewis, 101 U. S. 22, 25 L. Ed. 989, the Federal Supreme Court had before it the then existing constitutional provisions of this State providing for an appeal of certain cases arising in the eastern portion of the State to the St. Louis Court of Appeals but permitting a direct appeal to this court in similar cases arising in other counties, and it was held that such provisions did not violate the constitutional guaranty of equal protection. Other cases laying down the same rule are: Atchison, Topeka and S. F. R. v. Matthews, 174 U. S. 96, 19 Sup. Ct. 609, 43 L. Ed. 909; and Finley v. People of California, 222 U. S. 28, 32 Sup. Ct. 13, 56 L. Ed. 75. We are confronted, therefore, with the question of whether or not there was a reasonable and just relationship between the principle of classification here adopted and the ends sought to be accomplished in this legislation.

While it is unquestionably desirable to adopt a uniform merit system for the employment of municipal civil servants it can easily be seen that the employment of agents of certain special commissions can best be left to the members of those commissions who are presumably experts in performing the work entrusted to them. It is also a universal custom, supported by some reason, to permit legislative bodies to control the appointment of their own employees. This court cannot therefore say that the classification here made was inherently unreasonable.

A similar attack is made upon the provisions of the said 18th Amendment exempting present employees from examination under the new merit system. Such exemptions have been included in most civil service statutes. The theory upon which they are based is that the present employees have already proven their fitness by past service. The exemption is quite similar to that which has usually been placed in medical practice acts. Such acts require the examination and license of persons desiring to practice medicine but very generally have exempted from the examination requirement doctors who, for a given period prior to the enactment of the law, have been actually engaged in the practice of their profession. It has been directly held that such an exemption does not violate the constitutional guaranty of equal protection. [Dent v. State of West Virginia, 129 U. S. 114, 9 Sup. Ct. 231, 32 L. Ed. 623; Hawker v. ▮▮▮▮ People of New York, 170 U. S. 189, 18 Sup. Ct. 573, 42 L. Ed. 1002.] These rulings, we think, are by analogy controlling in the present case.

Relator also contends that the above cited provisions of the amendment are violative of the due process of law clause of the 14th Amendment to the Constitution of the United States. It has been uniformly held that a public office is not property in the constitutional

sense and that the right to be appointed to a public office is not a natural or property right within the protection of the due process clause. [State ex rel. v. Davis, 44 Mo. 129; State ex inf. Crow v. Evans, 166 Mo. 347, 66 S. W. 355; State ex rel. v. Kansas City, 310 Mo. 542, 276 S. W. 389; Motley v. Callaway County, 347 Mo. 1018, 149 S. W. (2d) 875; People v. Evans (Ill.), 93 N. E. 388; Crampton v. O'Mara (Ind.), 139 N. E. 360.]

Relator attacks Secs. 17 and 19 of the Charter Amendment. Sec. 17 provides that no classified civil servant shall be under any obligation to contribute to a political fund or to render political service; that no city authority shall discharge or promote any such person or promise or threaten to do so because of his refusal to contribute money or service for political purposes; that the solicitation of political funds from employees in the city building is prohibited and that the classified employees themselves shall not take part in soliciting such contributions. Sec. 19 prohibits any person in the classified service from using official authority or influence to coerce political action, or to interfere with an election, or from taking an active part in its political campaign, or from serving as an officer of a political club or organization, or from circulating political petitions, working at the polls, distributing badges, favoring or opposing political candidates. This section, however, carefully safeguards the rights of city employees to belong to political organizations, to cast their votes as they please and to express privately their opinions upon political questions. City employees may become candidates for public office but only after resigning their employment.

Relator states that these restrictions upon political activity deprive the members of the classified service of their property and liberty without due process of law. It is to be noted that there is no inherent right to hold public office. Such a right is not comprehended within the words "liberty" and "property" as the same are employed in the 14th Amendment to the Constitution of the United States. [State ex rel. v. Davis, 44 Mo. 129; State ex inf. v. Evans, 166 Mo. 347, 66 S. W. 355; Gregory v. Kansas City, 244 Mo. 523, 149 S. W. 466; State ex rel. v. Kansas City, 310 Mo. 542, 276 S. W. 389; State ex rel. v. Bair, 333 Mo. 1, 63 S. W. (2d) 64; State ex rel. v. Coon, 316 Mo. 524, 296 S. W. 90; Motley v. Callaway County, 347 Mo. 1018, 149 S. W. (2d) 875.] Even the right to vote is not included within the words "privileges or immunities" which the states are forbidden to abridge under the above mentioned 14th Amendment. [Minor v. Happersett, 21 Wall. 162, 22 L. Ed. 627.] But it is alleged that the curtailment of certain political activities on the part of members of the classified service, without a similar curtailment of the activities of other city officials and employees, constitutes a discrimination which violates the equal protection clause of the last above mentioned amendment. We have heretofore discussed the right of the states and their

subordinate municipalities to classify persons or activities, making certain statutory restrictions applicable to some classes but not to all and, as we have seen, the sole question in such cases is whether or not the principle of classification be a just and reasonable one. For many years it was contended that whenever a change in administration took place the public employees appointed by the former administration should be immediately discharged and their places filled with supporters of the victorious candidates. "To the victor belong the spoils" ran the ancient political maxim. We have wisely seen in recent years the folly of this policy. Such employees fall into two classes. In the first of these classes we may place members of legislative bodies and the principal executive officers of city, state or nation. Such officers have in their hands the formation and carrying out of public policy. Under a democratic system of government they must be either elected directly by the people or appointed by elective officials from the group of their political supporters. It is only in this manner that we can be assured that the policies of government will be framed in accordance with the popular will. But there are many other governmental employees, who have nothing to do with forming public policy. Their sole function is to perform ministerial duties in the manner in which they have been directed to act ▮▮▮ by law or by orders of their superiors. There is no necessity whatever of maintaining popular control over the choice of such officers. The only criterion to be applied to their selection is that of efficiency. It is well known that the efficiency of such ministerial officers is greatly decreased when we frequently change our employment personnel. Real efficiency is gained through long experience and the public can be assured of the service of the highest type of individuals only when some sort of permanent tenure is guaranteed. To separate this group of ministerial employees from the uncertainties of political influence requires that they be forbidden to take a public and prominent part in the activities of political parties and in election campaigns. The provisions of the amendment forbidding the solicitation of political contributions serve as a necessary safeguard to the office holders themselves; while the entire body of the provisions in regard to political activity helped to free elections from the dominating influence of a bureaucracy intent on maintaining itself in power. In general, the line between the classified and unclassified civil service coincides with the classification of ministerial and policy-forming public officers. There are, of course, exceptions to this statement but the Legislature cannot be held to draw distinctions with hair-line accuracy.

Relator further attacks these provisions on the ground that they constitute an interference with freedom of speech as guaranteed to the citizens of this State by Sec. 14 of Art. II of the Missouri Constitution and the due process clause of the 14th Amendment to the Constitution of the United States. A sufficient answer to this contention, as

well as to all of relator's contentions in regard to these political restrictions, is found in the language of the late lamented Justice HOLMES in McAuliffe v. Mayor of New Bedford (Mass.), 29 N. E. 517: . "The petitioner may have a constitutional right to talk politics, but he has no constitutional right to be a policeman. There are few employments for hire in which the servant does not agree to suspend his constitutional rights of free speech as well as of idleness by the implied terms of his contract. The servant cannot complain, as he takes the employment on the terms which are offered him. On the same principle the city may impose any reasonable condition upon holding offices within its control."

Relator contends that the said Charter Amendment unconstitutionally vests in the Civil Service Commission and its director the power to make rules and also the power to hold hearings on complaints and in the course thereof to subpoena, swear and examine witnesses. It is said that the powers thus entrusted to these officers are a commingling of executive, legislative and judicial powers. Because of this it is contended that the said amendment violates Art. 3 of the Missouri Constitution. Under Article 3 the powers of government set forth in the Constitution must be divided into three separate departments: legislative, executive and judicial, each confined to a separate magistracy. It is to be doubted, however, whether the restrictions of Article 3 have any application to municipal governments. It is to be remembered that for many years the function of presiding over municipal courts in certain small towns has been entrusted to the mayor of such communities. Even in the case of some larger cities, as for example in that of the City of Hannibal, the charter provides for the mayor to preside in the recorder's court when the recorder shall be disqualified. City councils and town boards, while primarily exercising legislative functions, also perform many executive and administrative acts. The county court of each county in Missouri is a court of record but actually performs very few judicial functions. It is primarily both a legislative and an administrative body. While it is true that we are not bound in constitutional cases to construe the fundamental law in accordance with custom and usage, still a usage long established and constantly followed by the legislative and executive branches of the government carries with it much persuasive authority. To hold that the doctrine of separation of powers must be rigorously applied to counties and cities would upset many institutions of long standing and great usefulness. We are not persuaded that such is the law.

But even if the doctrine of separation of powers applies to city governments, we are not convinced that the constitutional provisions, rightly understood, are violated by the charter provisions here in question. The doctrine under consideration is said to have originated in the writings of the French publicist Montesquieu and

to have arisen out of his misunderstanding of the British Constitu- tion ▮▮▮▮ as interpreted by Blackstone. In practice it can mean only that the general functions of government fall into the three great departments mentioned. In a complex modern state there are many border-line cases where a given political function partakes .of the nature of legislation, execution and adjudication. Such a function must often be performed by a single magistrate, board or commission. Take for example the power of issuing subpoenas, here severely criti- cized by relator. From time immemorial such power has been exer- cised by parliament in connection with its legislative as well as its judicial functions. Since the very foundation of our government it has been exercised by congress and. by the legislatures of the several states. Of recent years it is universally exercised by the so-called quasi-judicial boards and commissions. To enumerate only a few ad- ministrative officials who possess this power we may mention the Interstate Commerce Commission, the Communications Commission, the Federal Trade Commission, the Secretary of · Agriculture, and each of the thousands of local draft boards set up by the Selective Service and Training Act of 1940. In our own state government the power is possessed and used by the Workmen's Compensation Com- mission, the Public Service Commission,' the Social Security Com- mission and the'Supervisor of Liquor Control. Many of the boards and bureaus above enumerated have also been given the power to promul- gate rules and regulations which have the force of law. If these rules and regulations merely fill in the details of statutes duly enacted by the Legislature, they are held valid. Thus the political bodies above mentioned, all of which lie upon the uncertain border line between the various, departments of government, are constitutionally entrusted with powers which are in their nature a combination of legislative, executive and judicial powers. The present case forms no exception to the rule and we are convinced that the constitutional requirements as to separation of powers, even if they apply to cities at all, are not in- fringed by these provisions.

▮ It is next stated that paragraph (t) of Section 3 of said 18th Charter Amendment confers upon the comptroller of the city arbitrary power to refuse the payment of salaries except upon evidence satis- factory to him that the person to be paid has been lawfully employed and is entitled to payment for his services. This paragraph, in our opinion, can have no greater force and effect than a provision in· a private contract that services rendered must be satisfactory to the employer or that any dispute regarding the same shall be subject to the adjudication of some third person, as for example an engineer or an architect. It has been repeatedly held that such provisions do not relieve a person liable where the action of the other contracting party or the arbitrator is purely arbitrary or capricious, 'but that in such instances the resort may be had to the courts. [Burns v. Reis, 196

Mo. App. 694, 191 S. W. 1096; Keeler v. Clifford (Ill.), 46 N. E. 248; MacDonald v. Kavanaugh (Mass.), 156 N. E. 740; Ellis v. Interstate Business Men's Accident Assn. (Iowa), 168 N. W. 212, L. R. A. 1918F, 414.] If, then, the comptroller refuses payment in a case where the employment has actually been illegal, the employee is not deprived of any rights; but if the comptroller wrongfully refuses payment, the employee would be entitled to sue the city in the ordinary manner. This is all that said paragraph (t) of Sec. 3 of the Amendment can mean and, as so construed, it is not arbitrary, unreasonable or a spoliation of the rights of the employee and hence does not conflict with the due process clause.

It is next objected that the provision requiring an examination fee for applicants for civil service employment deprives them of their rights without due process. But, as we have seen, there is no natural right to hold public office nor does such office constitute property. The requirement of an examination fee is entirely reasonable. This court itself, in providing for examination of persons desiring to become its officers as attorneys at law, has provided for such a fee.

It is said that the 18th Charter Amendment, in providing for a term of office of six years for civil service commissioners, violates Sec. 14 of Art. IX of the Missouri Constitution. We must attend to the language of such section, which we quote, italicizing certain words:

"Except as otherwise directed by this Constitution, the *General Assembly* shall provide for the election or appointment of such other county, township and municipal officers as public convenience may require; and their terms of office and duties shall be prescribed by law; but no term of office ▆▆ shall exceed four years."

By the words "except as otherwise directed by this Constitution" reference must be had, among other things, to Sec. 20 of the same Article, which gives to the people of St. Louis the right to frame their own charter. Such section provides that the charter must name certain officers, but it leaves to the people of the city the right to provide themselves with other officers. Returning, then, to Sec. 14 of Art. IX of the Missouri Constitution. The limitation upon terms therein contained applies to the officers whose offices have been created by the legislature in accordance with the power therein granted. It does not and cannot apply to offices otherwise created. The present offices were not created by the Legislature but by the people. Hence the section has no bearing upon this case.

Relator says that the 18th Charter Amendment makes an unreasonably large appropriation for the maintenance of the Civil Service System. Without passing upon our own right to review the reasonableness of such an appropriation, it is sufficient to say that there is no evidence in the record before us that the appropriation is unreasonable.

It is said that the provisions of Sec. 13 of the 18th Charter Amendment, enabling the city to sue an officer who has illegally appointed some subordinate for money paid out in wages to said subordinate, are unreasonable and arbitrary and a deprivation of property rights without due process. If such section be construed to mean that the officer may be sued and must respond in damages regardless of his fault, some question of its constitutionality might be raised. We do not so construe it. The section applies to appointments made "in contravention of the provisions of this article or of the rules and ordinances made in pursuance thereof." Being penal in its nature the section must be strictly construed. [State ex inf. v. St. Louis & S. F. R. Co., 328 Mo. 605, 142 S. W. 279.] So construing it, we hold that the words "in contravention of the provisions of this article" refer to an intentional or a negligent act of the appointing officer and that the section does not create liability without fault. Hence it is constitutional.

It is next contended that Sec. 14 of the Charter Amendment, which authorizes the personnel department by agreement with other city departments to conduct examinations of applicants for licenses issued by such other departments is arbitrary and unreasonable. Relator says that regardless of the nature of such license the department by executive rule can require an examination. Under its language it is contended that by agreement between the recorder of deeds and the personnel department a physical examination of applicants for license to marry might be required. We do not so construe the section. We construe it to mean that where by a valid law or ordinance any department of the city is authorized to require an examination as a condition precedent to issuing of a license, it may delegate to the personnel department the function of giving such examination. In any event no arbitrary or unreasonable exercise of powers under this section has been attempted and it does not bear such a necessary relationship to the whole amendment that its unconstitutionality would affect the rest of the enactment.

It is said that Sec. 20 of the Charter Amendment is in conflict with Sec. 11785, R. S. Mo. 1939 [Mo. St. Ann., sec. 10477, p. 3816]. Said Sec. 20 provides that city employees shall be granted a reasonable time to vote not exceeding four hours. The statutory section cited provides that any qualified voter shall be allowed four hours from his employment to vote. Even if this section of the statute applied to public corporations, the charter provision would not be invalidated thereby. The two would have to be read together. The charter provides for a leave of absence of not more than four hours and the statute of a leave of four hours. Hence the words "not more than" in the charter would have no effect, but certainly this would not invalidate the entire Charter Amendment. It is also said that the prohibition against political activity of city employees above referred

to contravenes Sec. 11782, R. S. Mo. 1939 [Mo. St. Ann., sec. 10474a, p. 3815]. Reading said section in connection with other sections adopted at the same time makes it clear that it applies only to private employers and not to municipalities. Hence the point must be ruled against the relator.

Relator also contends that this court, in the case of State ex rel. Rothrum v. Darby, 345 Mo. 1002, 137 S. W. (2d) 532, has ruled that provisions similar to those contained in the present amendment were invalid. The Rothrum case did not involve a civil service system adopted by charter. It simply held invalid an attempt by a city manager to fix a pay scale in violation of the lawfully enacted ordinance. The situation is entirely dissimilar to that now before us and the case is not an authority in the present situation.

None of the constitutional and statutory objections urged against the validity of this amendment are, in our opinion, well taken. We hold that the Eighteenth Charter Amendment is a valid and binding portion of the Charter of the City of St. Louis and that the respondents have, therefore, been properly appointed to office and lawfully hold their offices. Hence our judgment must be against the relator and for the respondents. Accordingly it is ordered that relator's petition for a writ of quo warranto be denied. All concur, except *Gantt*, J., not sitting.