Solomon SLATER et al., Appellants,

v.

CITY OF ST. LOUIS, a Municipal Corporation, et al., Respondents.

No. 37949.

Missouri Court of Appeals,
St. Louis District,
Division Four.

Jan. 25, 1977.

Motion for Rehearing or Transfer
Denied March 15, 1977.

Application to Transfer Denied
May 10, 1977.

Hearns, Padberg, McSweeney & Slater, Edward P. McSweeney, St. Louis, for appellants.

Jack L. Koehr, City Counselor, James J. Gallagher, Associate City Counselor, St. Louis, for respondents.

ALDEN A. STOCKARD, Special Judge.

Plaintiffs have appealed from the judgment of the trial court dismissing their petition for a declaratory judgment.

Plaintiffs are employed by the City of St. Louis as members of what they call the "Airport Police." Defendants are the City of St. Louis, the members of the Civil Service Commission of the City of St. Louis, and the members of the St. Louis City Airport Commission.

Plaintiffs allege that the "Airport Police" was originally created as a "Security Force" to perform watchman and general security duties at Lambert-St. Louis Airport, but that now their duties and training, the powers they exercise, and "the pressures, hazards and risks as police officers" correspond to or are greater than the duties of Municipal Police Officers of the City of St. Louis and St. Louis County, and that on a "corresponding basis" their "average salaries" are substantially less than the salaries of the police officers of Metropolitan St. Louis. They further allege that the Civil Service Commission of the City of St. Louis recommended, and the City approved the recommendation, that plaintiffs be classified differently from and paid less than police officers of Metropolitan St. Louis, and such classification is arbitrary, capricious and unreasonable. Plaintiffs then allege that by reason of their compensation being less than that of the officers of the Metropoli-

tan Police they have been deprived of equal protection of the law in the violation of the Fourteenth Amendment of the Constitution of the United States, and that the defendants have violated Art. XVIII, § 2(b) of the Charter of the City of St. Louis which, they allege, provides for "like pay for like work."

The prayer is for a declaratory judgment that "the City of St. Louis be required to compensate plaintiffs commensurate with their duties and functions and at the same rates and pay scales afforded police officers of the Metropolitan Police Department of the City of St. Louis," and for a judgment that Ordinance No. 56774 establishing a classification for plaintiffs is unconstitutional to the extent that it provides a compensation to plaintiffs at a rate less than that afforded to the St. Louis Metropolitan Police Officers.

Included in the petition are allegations, properly belonging in a separate count, that Art. VIII, § 2 of the Charter of the City of St. Louis requires all employees of the City to reside in the City; that the provision has been waived in the past by the Civil Service Commission but is presently applied to the plaintiffs and other city employees; and although the residency requirement "is neutral and nondiscriminatory on its face, because of its episodic and uneven application, it has served to deprive the Airport Police officers of equal protection of the law contrary to the 14th Amendment of the United States · Constitution." There is a prayer that the residency requirements of the City Charter be judged to be "inapplicable to plaintiffs."

We take judicial notice that St. Louis is a constitutional charter city operating pursuant to Art. VI, §§ 31, 32(a) and (b), of the Constitution of Missouri, 1945. Art. XVIII, § 4(a) of the Charter provides that the Board of Aldermen shall adopt a plan of compensation fixing the rates of all employees in the classified service (which includes the airport security force) on recommendation of the Civil Service Commission. The fixing of the compensation to be paid the security force at Lambert-St. Louis Airport is a legislative function in which the Board of Aldermen has a wide discretion. *City of Springfield v. Clouse*, 356 Mo. 1239, 206 S.W.2d 539 (banc 1947).

We also take judicial notice that the police force of the City of St. Louis is under the control and supervision of a police board consisting of four commissioners appointed by the Governor, and the mayor as an ex-officio member, and that the compensation to be paid to members of the police force is not determined by the City of St. Louis or any of its agencies, but by the General Assembly of the State of .Missouri. See §§ 84.010–84.240 RSMo 1969, and *State ex rel. St. Louis Fire Fighters Association Local No. 73, AFL–CIO v. Stemmler*, 479 S.W.2d 456 (Mo.banc 1972). We shall also take judicial notice that the Supreme Court of this State has judicially determined the purpose of the retention by the State of control over the St. Louis Police Force, and the legality of such action. In *State ex rel. Hawes v. Mason*, 153 Mo. 23, 54 S.W. 524 (1899) the court stated that "Laws * * * providing a metropolitan police system for large cities, are based upon the elementary proposition that the protection of life, liberty, and property, and the preservation of the public peace and order, in every part, division, and subdivision of the state, is a governmental duty, which devolves upon the state, and not upon its municipalities, any further than the state, in its sovereignty, may see fit to impose upon or delegate it to the municipalities. The right to establish the peace and order of society is an inherent attribute of government, whatever its form, and is co-extensive with the geographical limits thereof, and touching every part of its territory. From this duty, existing in the very nature of the state government, flows the corresponding power to impose upon municipalities of its own creation a police force of its own creation, * * * * ."

The General Assembly has created a separate classification, consisting of the police force of the City of St. Louis, because its functions and operations are of general State concern, and as to that classification it has retained control and supervision, including the determination of the compensa-

tion to be paid to the members of that force. The State of Missouri, by permitting the people of St. Louis to write their own charter for their city government subject to certain restrictions, *State ex rel. St. Louis Fire Fighters Association Local No. 73, AFL–CIO v. Stemmler,* supra, have delegated to it the governmental functions and duties of local concern and application. Thus we have the City exercising legislative control over matters of local concern, but the State retaining legislative control of police functions considered to be of general concern.

■■■ The equal protection clause of the Fourteenth Amendment "does not require an exactly equal treatment of all citizens, but * * * the legislature may create certain classes and may make laws applicable to some but not all of such classes provided that the principle of classification rests upon some real difference 'which bears a reasonable and just relation to the act in respect to which the classification is proposed.' " *State ex inf. McKittrick v. Kirby,* 349 Mo. 988, 163 S.W.2d 990, 994 (banc 1942). See also the discussion in 16 Am.Jur.2d Constitutional Law § 494, and particularly the statement that "The guaranty [of equal protection of the laws] does not intend to take from the states the right and power to classify the subject of legislation. It does not prohibit or prevent classification, provided such classification of persons and things is reasonable for the purpose of legislation, is based on proper and justifiable distinctions, considering the purpose of the law, is not clearly arbitrary, and is not a subterfuge to shield one class or unduly burden another or to oppress unlawfully in its administration."

When we take into consideration the allegations of the petition, the matters previously referred to of which we may and do take judicial notice, and recognize that in the exercise of its legislative discretion the State has retained control and supervision by the General Assembly of the St. Louis Police Force because of the compelling State interest and concern, but has delegated to the City of St. Louis the control and

supervision of matters of local concern, we conclude that such classification is permissible and proper, and for that reason the equal protection clause of the Fourteenth Amendment does not destroy or take away from the City of St. Louis its legislative discretion in determining the compensation to be paid members of the security force at Lambert-St. Louis Airport.

■■■ We find no merit to plaintiffs' contention that the difference between the compensation paid to them and to the St. Louis Police Force violates Art. XVIII, § 2(b) of the Charter of the City of St. Louis. That provision, which is one of the enumerated "principles and policies" to promote "a modern and comprehensive system of personnel administration for the city," is that "fair and equitable rates of pay shall be provided with due consideration of both the employes and the taxpayers and with due observance of the principle of like pay for like work, and suitable differences in pay for differences in work." This "principle" clearly implies that in fixing the compensation of employees there should exist an element of discretion. But, if the compensation for the St. Louis Police Force, as determined by the General Assembly, must be applied arbitrarily to the security force at Lambert-St. Louis Airport, no discretion exists. The "principle" can apply only when the Board of Aldermen has the authority to determine the compensation to be paid both groups which are alleged to be comparable. By its wording the provision does not purport to require identical compensation, and plaintiffs have not alleged facts which would invalidate the discretionary determination of compensation to be paid to plaintiffs.

■■■ We also find no merit to the contention that the residency requirements violate plaintiffs' constitutionally protected right to equal protection of the laws. In *McCarthy v. Philadelphia Civil Service Commission,* 424 U.S. 645, 96 S.Ct. 1154, 47 L.Ed.2d 366 (1976) the Supreme Court of the United States upheld against constitutional attacks the right of a city to require its employees to reside within the city. In addition, plain-

tiffs admit in their pleadings that the requirement is being enforced equally as to all employees of the city. Therefore, there is no discrimination against plaintiffs as a class, and the equal protection clause is not applicable.

The judgment is affirmed.

SMITH, P. J., and NORWIN D. HOUSER, Special Judge, concur.