**NATIONAL ADVERTISING COMPANY,**
**Plaintiff-Appellant,**

v.

**STATE HIGHWAY COMMISSION,**
**Defendant-Respondent.**

No. 37498.

Missouri Court of Appeals,
St. Louis District,
Division Four.

Feb. 22, 1977.
Motion to Modify Opinion Denied
April 15, 1977.

Coburn, Croft, Shepherd & Herzog, Patrick C. Dowd, St. Louis, for plaintiff-appellant.

William Darmstaedter, II, State Highway Dept., Manchester, Bruce A. Ring, Chief Counsel, J. David Bechtold, Jefferson City, for defendant-respondent.

Williams & Smallwood, John Z. Williams, Rolla, amicus curiae for Clarence A. Nowak et al.

Neale, Newman, Bradshaw & Freeman, Paul L. Bradshaw, Joseph A. Bohrer, Springfield, amicus curiae, for Pioneer Advertising Co., et al.

Spencer, Fane, Britt & Browne, Dale E. Sporleder, Jefferson City, amicus curiae, for DeSoto Advertising Co., et al.

SMITH, Presiding Judge.

Plaintiff appeals from an adverse declaratory judgment and denial of a permanent injunction arising from proposed actions by defendant pursuant to the Missouri Billboards law, Sections 226.500 to 226.600 RSMo 1969.[1] It is initially necessary to determine what matters raised on the appeal are still viable in view of the amendment of the law by House Bill 1478[2] effective June 24, 1976. To do that a review of the act and its legislative history and the facts surrounding this litigation is necessary.

In 1965, the Federal Highway Beautification Act of 1965 (23 U.S.C. Section 131 et seq.) was enacted requiring states to effectively regulate outdoor advertising structures within a restricted area (660 feet of the nearest right-of-way of any interstate or primary highway) or be penalized 10% of their federal highway appropriation. The purpose of the legislation was to promote an orderly display of outdoor advertising by, among other things, providing funds to the states for the removal of unsightly outdoor advertising in the restricted area which cluttered open space or was unattractive by its appearance. In the same year the Missouri legislature passed Conference Committee Substitute for Senate Bill 8,[3] Laws 1965 pp. 900–905, (Sections 226.500 to 226.600 RSMo 1969) to meet this state's obligations under the federal act. S.B. 8 was Missouri's first comprehensive outdoor advertising control law. It went into effect January 1, 1968. See generally *Whitman v. State Highway Commission,* 400 F.Supp. 1050 (W.D.Mo.1975).

The provisions of S.B. 8 relevant to this action declared unlawful all signs erected in non-conformity with the sizing, spacing, lighting and locational standards in the statute. S.B. 8, Laws 1965, Sections 3, 5, 9, pp. 901–904. These unlawful signs could be removed without compensation after writ-

---

1. Several amicus curiae briefs have been filed in support of plaintiff's position. We have read those briefs but make no attempt to answer issues raised solely in those briefs.

2. Hereinafter H.B. 1478.

3. Hereinafter S.B. 8.

ten notice to the sign owner or property owner. S.B. 8, Laws 1965, Section 9, p. 904.

Enforcement of S.B. 8 was lax. No comprehensive program to enforce S.B. 8 was effectuated by the defendant and few signs were removed while the law was in effect. Funds from the federal government to pay its share of removal costs were not forthcoming.

On February 10, 1972, the United States Secretary of Transportation declared that S.B. 8 did not provide the "effective control" of signs required by the federal act, and ordered a 10% penalty imposed. The Secretary agreed to suspend the penalty if Missouri would agree to two conditions. First, enter into an agreement with the Federal Highway Administration setting out the guidelines for "effective control." Second, enact legislation by March 31, 1972, implementing the regulatory guidelines stated in the agreement. The agreement, which states that Missouri will enact the necessary legislation in order to receive its full share of federal-aid highway funds, requires that the state "effectively control" outdoor advertising signs, erected after the effective date of the new legislation (March 30, 1972) as required by the federal act.

In response to this agreement Senate Committee Substitute for Senate Bill 382,[4] Laws 1972, pp. 856–863 (Sections 226.500 to 226.600 RSMo 1969) was enacted to carry out the state's obligation required by the federal legislation. Standards for sizing, spacing and lighting were enacted along with locational restrictions. Sections 226.-520 and 226.540, S.B. 382, Laws 1972, pp. 857–861. Other restrictions relating to the upkeep, erection and placement of signs were also included, a permit system to monitor the enforcement of the controls was adopted, and provision made for removal of unlawful signs. Sections 226.550–226.580, S.B. 382, Laws 1972, pp. 861–863. Compensation was to be paid for the removal of lawful non-complying signs, Section 226.-570, S.B. 382, Laws 1972, p. 862, while unlawful signs were to be removed without compensation, Section 226.580, S.B. 382,

Laws 1972, pp. 862–863. Removal of signs was authorized only after notice received by the property or sign owner giving him thirty days to remedy the defect or appeal the action of the defendant. Section 226.580, *supra.*

Section 226.550.2 of S.B. 382 provided that " . . . the state highway commission shall within ninety days of the effective date of this act [March 30, 1972] issue permits and identification tags, upon application and payment of the requisite fee for any structure lawfully in existence on the day prior to the effective date of this act . . . ."

The defendant interpreted this provision to require the applications be made for permits for pre-March 30 lawfully erected signs by June 28, 1972. It was further defendant's position that failure to make such application by that deadline thereafter precluded sign owners from obtaining permits and made such signs subject to removal without compensation pursuant to Section 226.580, S.B. 382. Plaintiff was notified of rejection as untimely of a number of permit applications pursuant to this position. From December 1973, until July 30, 1975, plaintiff received 438 removal notices for 438 separate signs. The sole ground of removal for 419 of these signs was the failure to obtain a permit. The remaining 19 notices either specified a separate ground for removal or listed a separate ground in addition to lack of a permit. Plaintiff requested an administrative hearing on each notice. These hearings were consolidated and at the time suit was filed evidence had been taken in two hearings involving 98 of plaintiff's signs. No decision in those hearings has been rendered because of a restraining order issued by the trial court. That restraining order was continued in effect by the trial court pending resolution of this appeal.

As part of the administrative hearings, defendant propounded interrogatories to plaintiff. Over plaintiff's objection that no authority existed for interrogatories in an

---

4. Hereinafter S.B. 382.

administrative hearing, plaintiff was ordered by the hearing examiner to answer the interrogatories.

We will make no attempt to delineate the issues raised in plaintiff's suit for declaratory judgment and injunction, but will rather delineate the issues presented by plaintiff's appeal from the lower court judgment. Those issues are that the trial court erred in:

(1) upholding defendant's rules that required permit applications to be filed prior to June 28, 1972;

(2) finding the law imposes a mandatory permit system;

(3) finding that permits are required as a condition to erecting signs in unzoned business areas;

(4) finding that the law permits the removal without compensation of signs erected in violation of lighting, sizing, spacing or location requirements of S.B. 8. (signs erected between Jan. 1, 1968 and March 30, 1972);

(5) finding that the law does not authorize permits for non-conforming signs after a removal notice has been issued;     .

(6) failing to rule on the validity of the use of interrogatories in administrative hearings; and

(7) failing to issue an injunction.

■  After the notice of appeal and most of the briefing in this case, H.B. 1478, Laws 1976, p. —— became effective on June 24, 1976. It has a substantial impact upon the points raised by plaintiff. The most important impact is upon the question of permits for signs lawfully in existence prior to March 30, 1972. S.B. 382 contained the previously quoted language regarding permits and in addition stated:

"226.550.2 . . . For purposes of this act, the terminology 'structure lawfully in existence' or 'lawfully existing' sign or outdoor advertising shall, nevertheless, include the following signs unless said signs violate the foregoing provisions of paragraphs (a) thru (e) of this subsection:

(1) All signs erected prior to January 1, 1968;

(2) All signs erected before the effective date of this act [March 30, 1972] but on or after January 1, 1968, which would otherwise be lawful but for the failure to have a permit for such signs prior to the effective date of this act; provided, however, that any sign or structure which was not in compliance with sizing, spacing, lighting, or location requirements of the act repealed hereby, wheresoever located, shall not be considered a lawfully existing sign or structure; . . . ."

H.B. 1478 added the following language to Sec. 226.580 dealing with removal of unlawful signs:

"3. . . . Notwithstanding any other provisions of sections 226.500 to 226.600, no outdoor advertising structure defined as a 'structure lawfully in existence' or 'lawfully existing,' by subdivisions (1) and (2) or section 226.550 shall be removed for failure to have a permit until a notice, as hereinabove provided, has been issued after August 13, 1976, which shall specify failure to obtain a permit as the basis for alleged unlawfulness, and shall advise that failure to take the remedial action of applying for a permit within thirty days will result in the sign being removed. . . . ."

It is conceded by the defendant, and apparent from the language, that these sections have the effect of "forgiving" a prior failure to obtain a permit and affords a sign owner the opportunity to have his sign treated as "lawfully in existence" upon applying for a permit after receiving notice of his failure to have a permit. "Lawfully existing" signs may be removed, but only with just compensation. Section 226.570 RSMo 1969. We conclude therefore that the amendment of 1976 has rendered moot plaintiff's first issue on appeal. As to those signs for which removal notices were issued based solely upon absence of a permit, the new amendment requires a new notice after August 13, 1976, and gives the owner the opportunity to correct the defect. The Commission's prior rules have been super-

ceded by the statute amendment and we need not pass upon their validity as to these "no permit only" signs.

■ We turn to plaintiff's point two since resolution of that question directly affects points 3, 4, and 5. We are constrained to observe that we have difficulty following plaintiff's argument that the law since 1972 does not require permits for billboards. It appears to be based upon the language of Section 226.550 which states:

"1. . . . the state highway commission is hereby authorized to collect fees hereinafter specified for the issuance of one-time permanent permits for outdoor advertising . . .."

and the language of paragraph 2 of that section previously set out on page 3 of this opinion.

We do not interpret these sections, as plaintiff does, as simply permitting the defendant to issue permits, or as making the application for permits a discretionary matter by the sign owner. Rather the first section is an authorization to the defendant to collect fees for the issuance of permits. The second section establishes the time within which the Commission must act. Throughout the act it is apparent that signs for which no permit is acquired are unlawful except those in zoned commercial or industrial areas where "state permits or permit fees shall not be required." Section 226.550.2(g). See Section 226.550.2(2) referring to signs " . . . which would otherwise be lawful but for the failure to have a permit for such signs prior to the effective date of this act;" Section 226.550.3 using the language "This inspection fee shall apply to all signs for which a permit must be obtained or for which a permit is obtained;" Section 226.580.1(2) referring to signs deemed unlawful as "Signs for which a permit is not obtained as prescribed in this act;" Section 226.580.3 utilizing the language " . . . which shall specify failure to obtain a permit as the basis for alleged unlawfulness . . ." and " . . . such signs with respect to which permits are so issued are hereby determined by the State of Missouri to have been lawfully

erected . . ." and Section 226.530 stating "The state highway commission is required to issue one time permanent permits as provided in section 226.550 for the erection and maintenance of outdoor advertising . . .." From a reading of the statute as a whole, it is clear that it was the legislative intention to require permits for all outdoor advertising signs except those in zoned commercial and industrial zones. We find no ambiguity in the act as respects the requirement of permits.

■ Nor do we find plaintiff's contention (Point III) that the difference in treatment as it pertains to permits between zoned areas and unzoned areas creates an arbitrary and capricious discrimination. The statute provides for restrictions on lighting, size, and spacing of signs on interstate or primary highways in both zoned and unzoned commercial and industrial areas. An unzoned area is one not zoned by state or local law or ordinance; a zoned area is one which is so zoned. Section 226.540(4). State permits are not required in zoned commercial or industrial areas if the state, county or municipal zoning authority has adopted laws or ordinances containing regulations as to size, lighting and spacing of signs consistent with the state Billboards law. Section 226.540(6). We do not find it arbitrary and capricious to provide a different degree of supervision and fee arrangement between those areas already regulated by law and those which are not. The legislature may presume that the subdivisions of the state will obey the state law and enforce their zoning codes compatibly with that law. Whether it would have been better or wiser to have vested all supervision and all control, including permits, within the defendant is not the question. Rather the question is whether the classification made was a permissible one within the legislative prerogatives. See *State ex inf. McKittrick v. Kirby*, 349 Mo. 988, 163 S.W.2d 990 (banc 1942) [3]; *Slater v. City of St. Louis*, 548 S.W.2d 590 (Mo.App.1977). We hold it was.

■ Points four and five may be treated together. We say that because we are un-

able to equate, as plaintiff does, the terms "unlawful" and "non-conforming" as synonymous. Non-conforming signs are those signs erected in conformance with law as it existed at the time of erection which are not now in compliance because of a change in the law. They are specifically treated as "lawfully in existence" by Section 226.550. To the extent permits are required for them, they fit within the "forgiveness" provision of H.B. 1478 previously discussed and the issues presented as to those signs are moot.

■ A different problem exists as to those signs which were erected from January 1, 1968 to March 30, 1972, which were not in compliance with S.B. 8 for reasons other than lack of a permit. The original "forgiveness" provision is restricted expressly to signs " . . . which would otherwise be lawful but for the failure to have a permit . . ." and specifically states that "any sign or structure which was not in compliance with sizing, spacing, lighting, or location requirements of the act repealed hereby, wheresoever located, shall not be considered a lawfully existing sign or structure; . . .." Section 226.550.-2(2).

Signs erected contrary to sizing, spacing, lighting or location requirements under S.B. 8 are not lawfully existing signs. Only lawfully existing signs are entitled to permits. Section 226.550.2. Signs which do not obtain permits are unlawful and subject to removal without compensation. Sections 226.580.1(2) and 226.580.4. It therefore follows that signs in violation of S.B. 8 are not entitled to permits and may be removed without compensation under Section 226.-580.1(2). Plaintiff is, of course, entitled to the protections of Section 226.580.3 concerning notice and review of the defendant's actions.

We do not find, as plaintiff contends, any intention or effort by the general assembly to forgive violations of S.B. 8 respecting sizing, spacing, lighting or location of signs. If plaintiff has violated the law of this state, it can hardly complain that the state does not elect to pay it compensation for its illegal conduct, or that such payment is required.

■ Since future administrative hearings will probably be required as to some signs, we have examined the question of the use of interrogatories in such proceedings. The act provides for administrative review pursuant to 536.067 to 536.090, RSMo 1969. See Section 226.580.4. Such a procedure is statutory and is governed by the legislative enactment. We find no authority under that statute for the use of interrogatories. Depositions, subpoenas and subpoenas duces tecum are provided for. Sections 536.070 and 536.073. Interrogatories are not mentioned. In the absence of such provision we must construe the statute to authorize only those methods of discovery specifically enumerated, and to exclude those not expressly mentioned. *Giloti v. Hamm-Singer Corp.,* 396 S.W.2d 711 (Mo.1965) [1, 2]. Depositions and interrogatories are not the same. Each has a separate procedure and separate function.

In view of our disposition of plaintiff's contentions and the requirement of new notices and hearings under H.B. 1478, we find no basis for injunctive relief.

The judgment is set aside and the cause remanded to the Circuit Court for dissolution of the restraining order and for entry of a declaratory judgment consistent with this opinion.

NORWIN D. HOUSER and ALDEN A. STOCKARD, Special Judges, concur.