Eldon BUGG, Appellant,

v.

**CITY OF BOONVILLE, a Municipal Corporation, Respondent.**

**No. WD 74377.**

Missouri Court of Appeals, Western District.

April 24, 2012.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 29, 2012.

Application for Transfer Denied Aug. 14, 2012.

---

Eldon Bugg, Boonville, MO, Appellant, pro se.

Louis J. Leonatti and Randall Baker, Mexico, MO, for Respondent.

Before Division Two: KAREN KING MITCHELL, Presiding Judge, and MARK D. PFEIFFER and GARY D. WITT, Judges.

KAREN KING MITCHELL, Presiding Judge.

Eldon Bugg, a citizen and taxpayer of Boonville, Missouri, filed an action in Cooper County Circuit Court seeking a declaration that Boonville City Ordinance 4216 was void, as well as an injunction preventing any further action based upon the ordinance. Bugg put forth two reasons supporting his claim that the ordinance was void: first, he claimed that the ordinance was void because the bill upon which it was based, Bill 2010–015, failed to pass by a majority of *members* elected to the city council; and second, he claimed that one of the council members who voted in favor of the bill had a conflict of interest based upon a previous contract bid submitted, but withdrawn, before the bill was voted upon. Both Boonville and Bugg moved for

summary judgment. The trial court granted summary judgment in favor of Boonville. We affirm.

## Factual Background

The city council of Boonville is composed of eight councilmen—two from each ward of the city. At the relevant time, the council members were: Pete Soener, Mark Livingston, Morris Carter, Chris Hombs, Jim Painter, Kathleen Conway, Glenwood Einspahr, and Henry Hurt. The mayor was Julie Thatcher.

On July 6, 2010, the city council held a regular meeting at City Hall; all elected members were present, along with the mayor, the city administrator, the city counselor, and the city clerk. On the calendar for the meeting was the third reading of Bill 2010–015, which was a bill to approve the Kemper Village Homes Project and preliminary site plan, to approve an escrow and disbursing agreement for completion guarantees of on-site infrastructure improvements, to approve a subdevelopment agreement detailing covenants and obligations of the developer, to provide an effective date, and to repeal all conflicting ordinances. Fourteen members of the public (including Bugg) spoke against the bill, and four members spoke in favor of the bill. Some opponents voiced concerns about possible conflicts of interest on the part of some council members. The mayor addressed these concerns by advising the public that rumors about conflicts of interest were untrue. Councilman Hombs confirmed that he had previously submitted a bid on the development, but he had since withdrawn the bid and had no financial interest in the project. Another council member indicated that he was unaware how rumors began about his involvement, but he had no involvement whatsoever in the project. The city counselor indicated that all members of the

council had a duty and right to vote on the issue.

After receiving testimony from various individuals associated with the project, the council called the matter to a vote. Four members voted in favor of the bill, and four members voted against the bill. The mayor then cast a tie-breaking vote in favor of the bill and signed the bill, making it Boonville City Ordinance 4216.

Bugg filed a declaratory judgment action against Boonville, seeking a declaration that the ordinance was void in that (1) it had not been passed by a majority of the elected council members; and (2) Councilman Hombs had a conflict of interest that should have precluded his vote. Boonville filed a motion for summary judgment, arguing that the mayor is empowered by statute to cast the deciding vote in the event of a tie and that Councilman Hombs did not have a conflict of interest at the time of the vote because he had withdrawn his bid on the project. Bugg filed his own motion for summary judgment as well, arguing that the mayor cannot cast a tie-breaking vote on ordinances and that Councilman Hombs's subsequent bid withdrawal was ineffective to remove the conflict of interest. The trial court granted Boonville's motion and denied Bugg's. Bugg appeals.

## Standard of Review

"When considering appeals from summary judgments, the Court will review the record in the light most favorable to the party against whom judgment was entered." *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). "Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion." *Id.* The non-movant is accorded "the benefit of all reasonable inferences from the record." *Id.*

Appellate review "is essentially *de novo*" because "[t]he criteria on appeal for testing the propriety of summary judgment are no different from those [that] should be employed by the trial court to determine the propriety of sustaining the motion initially." *Id.* "As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment." *Id.*

## Analysis

On appeal, Bugg raises two claims of error. First, he argues that the ordinance was void in that it failed to receive a majority vote of the elected members of the city council. Second, he argues that Councilman Hombs's vote should not be counted in that Councilman Hombs was precluded from voting once he entered a bid on the project contained within the ordinance.

## I.

■ The parties agree that Boonville is a third-class city and therefore is governed by the provisions of Chapter 77 of the Missouri Revised Statutes. Section 77.080 [1] provides that "[n]o ordinance shall be passed except by bill, and no bill shall become an ordinance unless on its final passage a majority of the members elected to the council shall vote therefor."

Here, the vote on Bill 2010–015 resulted in a 4–4 split among the council members. Bugg argues that this tie resulted in a

---

1. Statutory citations are to RSMo 2000, as updated through the 2011 cumulative supplement, unless otherwise indicated.

failure of the bill to pass. Boonville argues, however, that the mayor was statutorily empowered to break the tie, and with her vote in favor of the bill, a majority was achieved, and the bill was passed.

Section 77.250 provides that "[t]he mayor shall be president of the council and shall preside over same, but shall not vote except in case of a tie in said council, when he shall cast the deciding vote; but provided, however, that he shall have no such power to vote in cases when he is an interested party."

Both parties acknowledge this statute, but they attribute very different meanings to it. Bugg argues that the statute applies only where the council's tie vote results in the lack of a decision. Only then, he claims, can the mayor cast a "deciding vote." He reasons that because section 77.080 requires the vote of a majority of the elected council members in order for a bill to pass, a tie vote is simply a failure of the bill to pass and is a decision in itself; thus, no "deciding vote" is needed. Boonville argues, however, that the statute empowers the mayor to vote in the event of a tie because deadlock is disfavored. We agree with Boonville.

While at first glance section 77.080's requirement of a majority of members elected to the council would seem to indicate that the bill failed to pass since only four members of the eight-member council voted in favor of the bill, section 77.080 must be harmonized with section 77.250, which addresses what should occur in the event of a tie. We believe that section 77.250 essentially makes the mayor a member of the council for the limited purpose of breaking a tie when the council is evenly

divided on an issue. *See Grant City v. Salmon,* 221 Mo.App. 853, 288 S.W. 88, 90 (1926) (holding that section 77.250 allowed the mayor to break a tie vote of the city council in the passage of an ordinance); *and Mound City ex rel. Reinert Bros. Const. Co. v. Shields,* 220 Mo.App. 798, 278 S.W. 798, 804–05 (Mo.App.1925) (same).

Bugg relies on *Merriam v. Chicago, Rock Island & Pacific Railway Co.,* 132 Mo.App. 247, 111 S.W. 876 (1908), for the proposition that the mayor cannot be considered a member of the council for tie-breaking purposes.

In *Merriam,* the city council reached a tie vote when voting on the passage of an ordinance. 111 S.W. at 876. The president of the council, under a tie-breaking statute similar to section 77.250, voted in favor of the ordinance, and it was passed. *Id.* A challenger to the ordinance argued that it was void for lack of a majority vote of the *members* of the city council in that the president's vote was not to be counted, as the president was not a member of the council. *Id.* at 877. The court agreed, determining that the president was not a "member of the council," and that "there was not a majority of the members present voting for the ordinance, as there were only four members voting in its favor, *not counting the president.*" *Id.* (emphasis added).

We find *Merriam* distinguishable, however, from the present case.[2] *Merriam* was decided over 100 years ago and has not been cited by any Missouri decision since it was rendered. It is also inconsistent with both the *Mound City* and *Grant City* decisions issued twenty years later that involved the same statute at issue in

---

**2.** In addition to the distinguishing features discussed above, we note that it is unclear in *Merriam* how many council members voted or whether the president was voting to break a tie among those members present as the court

notes, without explanation, "it did not matter whether the absent member was counted or not; there was not a majority of the members present voting for the ordinance." *Id.* at 877.

Bugg's case. When *Merriam* was decided, municipal governments for second-class cities (which no longer exist under Missouri law) were structured in a different manner from current third-class cities. For example, there was a president elected at large to preside over the city council in addition to a mayor, and the president's role was similar to the vice president's role at the federal level, or the lieutenant governor's role at the state level; in other words, the president assumed the role and duties of the mayor in the mayor's absence. 1903 Mo. Laws 70; Mo. Stat. Ann. § 5490 (1906). At that time, the president, rather than the mayor, was given the power of a tie-breaking vote. *Id.* The governing laws when *Merriam* was decided had a much greater focus on the separation of powers. For example, section 5504 expressly prohibited any officer or member of the city council from holding any other state or city office during his term on the council, thus ensuring a separation of executive members from the legislative body of the council. Mo. Stat. Ann. § 5504 (1906). But this is no longer the case. For example, "[c]ity councils and town boards, while primarily exercising legislative functions, also perform many executive and administrative acts." *State ex inf. McKittrick ex rel. Ham v. Kirby*, 349 Mo. 988, 163 S.W.2d 990, 996 (Mo. banc 1942). "To hold that the doctrine of separation of powers must be rigorously applied to counties and cities would upset many institutions of long standing and great usefulness." *Id.*

Thus, we find that section 77.250 makes the mayor a member of the council for the limited purpose of breaking ties. Because the mayor was acting under her statutory tie-breaking power when voting on the bill, it was validly passed by a majority of the members of the council. Therefore, Ordinance 4216 is valid.

Point I is denied.

## II.

Bugg's second point on appeal argues that Ordinance 4216 is void in that Councilman Hombs, who voted in favor of the bill, had a conflict of interest that precluded his vote on the bill. His argument is based upon Boonville City Code §§ 2–108 and 2–132 and § 105.461 of the Missouri Statutes.

Section 2–108 of the Boonville City Code prohibits elected public officials from taking any actions "by reason of any payment, offer to pay, promise to pay, or receipt of anything of actual pecuniary value paid or payable, . . . to himself or any third person, . . . made or received in relationship to or as a condition of the performance of an official act." Boonville City Code § 2–108(1). The Code also prohibits elected public officials from "[f]avorably act[ing] on any matter that is so specifically designed so as to provide a special monetary benefit to such official . . . whether received from the state of Missouri or any third party by reason of such act." *Id.* at (4). The Code further provides that "[i]n all such matters such officials must [recuse] themselves from acting." *Id.*

Section 2–132 provides that "[e]very member who shall be present when a question is stated by the chair shall vote thereupon, unless excused by the council, or unless he is prohibited by section 2–108 of this Code, in which case he shall not vote."

Here, Councilman Hombs acknowledged that he had seen the plans for the Kemper Village Development and was thereafter asked to submit prices on erosion control and storm water prevention for the development. Councilman Hombs submitted a pricing sheet in response to the request. He received no other communication after submitting the pricing sheet, and he was not awarded any contracts, payments, or

benefits concerning the project. Before the council voted on the project, Councilman Hombs withdrew his bid, and he received confirmation that the withdrawal had been received. He also disclosed the fact that he had withdrawn his bid to the City Council before voting in favor of the project. Following the vote, Councilman Hombs had no further communication with anyone associated with the project, and he received no compensation or other benefits from any of the project's sponsors or contractors.

■ Bugg first argues that simply by submitting a bid, Councilman Hombs created a conflict of interest that forever precluded him from voting on the project, even though the bid was withdrawn before voting occurred. We disagree.

Section 2–132 speaks in temporal terms of "when a question is stated by the chair"; thus, a council member is prohibited from voting only if the conditions described in section 2–108 exist "when a question is stated by the chair." Here, Councilman Hombs no longer had an interest when the question regarding approval of the Kemper Village project was stated by the chair. Consequently, sections 2–108 and 2–132 did not preclude his vote on the matter.

Bugg also argues that Councilman Hombs was precluded from voting due to his failure to comply with the provisions of section 105.461. Section 105.461.1 provides, in pertinent part, that

> any member of the governing body of a political subdivision who has a substantial personal or private interest in any measure, bill, order or ordinance proposed or pending before ... such governing body, shall, before such official

passes on the measure, bill, order or ordinance, file a written report of the nature of the interest with the ... clerk of such governing body and such statement shall be recorded in the appropriate journal or other record of proceedings of the governing body.

Bugg claims that Councilman Hombs never filed such a report, and, therefore, he was not allowed to vote on the bill. We disagree.

Although the record indicates that Councilman Hombs never filed such a report, the record also indicates that Councilman Hombs had no personal or private interest in the bill at the time of the vote because he had withdrawn his previously submitted bid. Simply put, he was under no obligation to file a report outlining his *lack* of personal interest in the bill before voting on the bill.[3]

Because he had withdrawn his previously submitted bid on the project, Councilman Hombs had no financial interest in the bill when it was called for a vote. Consequently, he was not precluded from voting by either the Boonville City Code or the Missouri Revised Statutes.

Point II is denied.

### Conclusion

The trial court's decision is affirmed.

MARK D. PFEIFFER and GARY D. WITT, Judges, concur.

---

3. Incidentally, section 105.461 does not prohibit a council member from voting upon a matter in which he has a private interest. Rather, it requires only that he disclose such interest before voting. *See, e.g., State ex rel. Stewart v. King,* 562 S.W.2d 704, 707 (Mo. App.1978).