**William R. SCHAEFER et al.,
Plaintiffs-Respondents,**

v.

**William R. NEUMANN et al.,
Defendants-Appellants.**

No. 37592.

Missouri Court of Appeals,
St. Louis District,
Division Three.

Dec. 29, 1977.

Motion for Rehearing and/or Transfer
Denied Feb. 14, 1978.

Application to Transfer Denied
March 13, 1978.

Niedner, Moerschel, Nack & Ahlheim, Robert V. Niedner, St. Charles, for defendants-appellants.

Robert D. Tucker, Albert E. Schoenbeck, St. Louis, for plaintiffs-respondents.

KELLY, Judge.

This is an appeal from a judgment of the Circuit Court of St. Charles County permanently enjoining the defendants-appellants from continuing to employ their properties, situated in an unincorporated portion of St. Charles County, approximately one mile west of O'Fallon and adjacent to Interstate 70, for certain business purposes. We affirm.

The property in question is bounded on the south by the North Service Road of Interstate 70 and on the north by the tracks of the Norfolk and Western Railway Company. Plaintiffs reside on property north of the railroad tracks, and directly north of defendants' property. McGee Road, a pri-

vate road constructed on a road easement twenty feet wide, runs northwardly from the North Service Road for Interstate 70, crosses the railroad tracks into the area where the plaintiffs reside and is the only means of access plaintiffs have to their residences.

McGee Road also divides defendants' property into two parcels. The parcel lying to the east of McGee Road is referred to hereinafter as the East Parcel, and that lying to the west of the private road as the West Parcel.

Defendants William Neumann and Ruth Neumann, husband and wife, are officers of defendant Goodfellow Auto Sales and Salvage Co., a corporation, which operates an auto salvage business on the East Parcel, and engages in the business of buying, selling and repairing mobile homes on the West Parcel.

The Neumanns purchased the West Parcel in 1967. Shortly after purchasing the parcel, they had it rezoned for industrial use, an M–1 classification under the County Zoning Order of 1959 which was then in effect. Under this zoning classification the operation of a "public garage" was permitted. After this parcel was rezoned a quonset hut was erected and it was rented out initially as a body shop and later to a truck hauling outfit which repaired trucks in it. At time of trial it was being used as a welding shop.

The Neumanns also rent an area on the West Parcel to Martin Hoffman who lives in a mobile home thereon. He does repair work on automobile motors and other machines brought onto the premises for that purpose. A couple by the name of Siar also occupies a mobile home on this parcel. Harold Siar testified at trial that he worked for McDonnell-Douglas from 7 a. m. to 3:30 p. m. and as a night-watchman for Goodfellow Auto Sales and Salvage Co. after 4:30 p. m. and until 10 or 11 p. m.

The Neumanns purchased the East Parcel in 1965. Prior to purchasing this parcel they had, since about 1958, engaged in the business of buying and selling automobiles and automobile parts, and repairing auto-

mobiles on a site south of and across the outer roadway of Interstate 70—"South side of Old Highway 40"—and when this parcel was purchased they were still so engaged. When the Neumanns purchased this parcel there was a seven room house on the premises which was made into three apartments and was being so used at that time. There was also an old shed out in back of the house which was used as a garage. Prior to their acquisition of the land a filling station had been operated there.

Mr. Whitener, another defendant, resided in the house on the East Parcel for a time. Sometime "in early 1965" the Neumanns sought and were granted a rezoning of this parcel to M–2—heavy industrial. In 1966 there was a fire which damaged the house, Mr. Whitener moved out, and they boarded-up the windows and stored various components of automobiles, such as generators and starters, therein. The County Zoning Order of 1959 specified automobile salvage yards as a permissible use in the heavy industrial district, M–2 classification. Goodfellow Auto Sales and Salvage Co. at time of trial conducted an auto salvage business on this Parcel and Messrs. Higgins and Neumann conducted a bumper and plate glass business on this Parcel also.

In July, 1967, the County Court amended the County Zoning Order and thereafter a salvage yard was a permissible use in any area zoned heavy industrial, M–2, but only after the location of such use had been approved by the County Court, after report by the County Engineer and the Planning and Zoning Commission. Salvage yards, even under the 1959 Zoning Order, had to be completely enclosed by a solid fence or wall not less than eight feet in height, and no change in this requirement was affected by the 1967 amendment of said Zoning Order.

The Revised Zoning Order, as relevant to the issues here, is set out in an appendix following this opinion.

With respect to the West Parcel, which was zoned "light industrial," permissible

and conditional uses authorized under the 1973 amendments are those permitted in the C–2 District "except dwellings, provided dwellings for, and to be occupied by, watchmen, guards, attendants and other personnel who customarily reside on the premises of an industrial use" permitted in this classification. Other uses relevant to the issues in this case were machine shops, electroplating, photo engraving, plumbing and sheet metal shops as well as accessory uses customarily incident to any of those uses.

Uses approved in the C–2 District—General Commercial District—included automobile service stations and automobile repair garages, provided no dismantled vehicles or parts were displayed or stored outside the building. Operation of a public garage or parking lot was permissible.

With respect to the East Parcel, the permissive uses in the heavy industrial district—M–2—included, among others, "[a]utomobile wrecking, cars and parts, storage and sale" as a conditional use. No dwelling, other than that for a resident watchman or caretaker employed on the premises was permitted.

Section 9 of the 1973 Rezoning Code covered "Non-conforming Use of Lands." Any non-conforming junk yard could be continued for a period not more than 5 years, provided it was enclosed with an 8 foot high sight-proof fence. Uses in existence at the time this Order was adopted which were eligible for conditional use permits were not considered non-conforming uses and could not be used nor construed to establish a non-conforming use on any lot or tract. Casual, intermittent, temporary or illegal use of the land or buildings on all or a part of the land could not be the basis for establishing a non-conforming use, and whether one existed was a question of fact to be decided by the Board of Adjustment after public notice and hearing.

Once established, a non-conforming use could be continued despite any amendment to the Zoning Order or Zoning District Map if no structural alterations were made and it could be changed to another non-conforming use of a higher classification.

A non-conforming use could not be enlarged, extended, reconstructed or altered except to conform to regulations of the district in which it was located.

Plaintiffs are the owners of and reside on four parcels of property which lie generally north of and directly across the Norfolk and Western Railway Company tracks from subject property of the Neumanns. This suit was filed in 4 counts.

Count I of Plaintiffs' Fourth Amended Petition on which this cause came on for trial, sought to enjoin the Neumanns, John P. Whitener, and the Goodfellow Auto Sales and Salvage Co. from depositing large quantities of junk, debris, used and salvaged automobile parts and equipment, and other such materials, on the East Parcel in violation of Sec. 5 of the Revised Zoning Order of 1973, restricting certain uses in an area zoned M–2—Heavy Industrial District—because the defendants had not obtained a conditional use permit. This Count further sought a decree enjoining the defendants from blocking McGee Road by obstructing it with junk, debris and other such materials and from damaging said road by creating ruts and holes therein by moving junk, salvaged automobiles and other heavy materials over the road thereby preventing plaintiffs from using the road as a means of ingress and egress from their residences.

Count II sought an injunction on the same activities of the defendants alleged in Count I, however, on the ground such activities constituted a private nuisance.

Count III sought to enjoin the Neumanns, Whitener and Goodfellow Auto Sales and Salvage Co. from engaging in the business of buying, storing, repairing, removing parts from and selling automobiles on the West Parcel; and it further sought to enjoin Mr. Neumann and Leonard Higgins from conducting their partnership business, Midwest Bumper and Glass Company, on this same Parcel, on the grounds that these businesses were so run that they constituted a private nuisance. It was al-

leged, and an injunction to stop such actions was prayed, that the defendants were interfering with plaintiffs' use of McGee Road by the same means alleged in the prior two Counts.

Count IV also sought an injunction against the same defendants named in Count III of the petition to enjoin them from "repairing damaged, deteriorated, used, and unoccupied mobile homes" on the West Parcel and from the "open storage and repair of automobiles" thereon. The theory of this Count, was that these activities of the defendants on the West Parcel constituted uses which were not permitted in areas zoned M–1, Light Industrial District, by the 1973 Revised Zoning Order.

The defendants' Answer denied these allegations of plaintiffs' petition relative to the alleged violations of the Zoning Order and further alleged that Goodfellow Auto Sales and Salvage Co. had, since June 26, 1965, been engaged in the business of buying, storing, repairing, removing parts from and selling automobiles on the East Parcel, and since June 12, 1967, had been engaged in the business of storing and repairing automobiles and mobile homes and removing parts from automobiles on the West Parcel. Laches and estoppel were also pleaded.[1]

The trial court entered "Findings of Fact, Conclusions of Law And Decision" wherein it found that until May, 1973, the primary place of business and officers of the Goodfellow Auto Sales and Salvage Company were located on the south side of the North Service Road of Interstate 70 and until May, 1973, there were as many as 1000 damaged automobiles located there; that in 1966 it occasionally began to store automobile parts, equipment and accessories *inside* a white house and a shed on the East Parcel with some parts stored *outside* the white house and shed; that in 1966 it began occasionally to store several new and used automobiles on the East Parcel which were offered for sale to the public; that in 1967,

the West Parcel was used for the sale of used automobiles; that in January or February, 1973, the land on which Goodfellow Auto Sales and Salvage Company operated its business south of the North Service Road was sold and by the terms of the sale Goodfellow Auto Sales and Salvage Company was required to dispose of its automobiles on said land by July 1, 1973; that after January 4, 1973, Goodfellow Auto Sales and Salvage Company began to openly store a substantial number of damaged and salvaged automobiles and automobile parts, equipment and accessories on both the East and the West Parcels.

That, in May, 1973, Goodfellow Auto Sales and Salvage Company moved the actual operation of its business of auto sales and salvage from the south side of the North Service Road to the East and West Parcels, at which time the systematic disassembly, dismantling, wrecking and salvaging of automobiles began on said parcels; that a short time after, Goodfellow Auto Sales and Salvage Company constructed a large metal building on the East Parcel and was operating its business in this building.

That in the Spring of 1973, Goodfellow Auto Sales and Salvage Company, William R. Neumann and John P. Whitener began to purchase damaged mobile homes and store and repair and refurbish the same for resale on the West Parcel.

That after January, 1973, a commercial welding shop began operating on the West Parcel and to openly store used motor vehicle parts and equipment.

That after January 4, 1973, McGee Road was occasionally blocked by the defendants, their employees, agents or tenants in the movement of automobiles, trucks, mobile homes onto or across said Road from the East Parcel to the West Parcel, and that automobile parts, equipment or accessories have occasionally fallen onto or been placed upon said Road thereby occasionally and temporarily curtailing the plaintiffs' right to ingress and egress to and from their residences.

---

1. Defendants, in their Answer, also challenged the constitutionality of the 1969 and 1973 amendments to the Zoning Order; however, because of the basis upon which the trial court's judgment rests, the constitutional issues were not reached.

That in the latter part of 1973, the defendants installed a metal part in the driveable portion of McGee Road near its intersection the North Service Road thereby depriving plaintiffs of the full use and enjoyment of McGee Road.

That in the latter part of 1973, defendants erected a chain link fence on the east, west, and south sides of their East Parcel; that it is not a "sight proof" fence; that the northern side of this Parcel is open and without fence.

That for several years prior to January, 1973, Martin Hoffman lived in a mobile home on the West Parcel as defendants' tenant and that he is not an employee of defendants; and

That defendants have not obtained a conditional use permit to conduct an auto salvage operation on the East Parcel.

The trial court's Conclusions of Law were that the plaintiffs had standing to seek an injunction; that the use of the East Parcel for the automobile and salvage operation, including the storage, dismantling, and sale of wrecked and dismantled automobiles and automobile parts, equipment and accessories constituted a violation of the M–2 District permissive uses of the 1973 Zoning Order, but that the use of the same Parcel for the operation of the bumper and windshield business was not in violation of the Zoning Order.

That the use of the West Parcel by the defendants for the storage of automobile parts, equipment and accessories outside of a building pursuant to the business conducted by Goodfellow Auto Sales and Salvage Company was a violation of Section 5, M–1 of the 1973 Zoning Order.

That the sporadic and occasional use of the East and West Parcels for storage of limited numbers of new and used automobiles and for the limited storage of automobile parts, equipment, and accessories within the buildings on said parcels prior to January 4, 1973, did not establish a non-conforming use on either Parcel by which the defendants could continue their present use of said Parcels, consisting of the salvaging and storing of approximately 450 damaged and wrecked automobiles, and automobile parts, equipment and accessories.

That the rezoning of the East Parcel in 1965 to M–2 District and of the West Parcel in 1967 to M–1 District did not establish a non-conforming use under the 1973 Zoning Order because the mere intended use of property even connected with a sporadic or occasional use does not establish such use as a non-conforming use.

That the obstructing of McGee Road by a metal post in the driveable portion thereof denies the plaintiffs of their lawful right of use of said road, but that the occasional and temporary blocking of said road by vehicles and depositing of parts in said road was not so substantial as to require equitable relief.

That the use of the West Parcel as a residence for a person or his family who was not a watchman or caretaker employed on the premises of the defendants constituted a violation of Section 5, M–1 District of the 1973 Zoning Order.

The trial court decreed that the defendants, their officers, etc. were permanently enjoined from:

1) operating an automobile salvaging business, an automobile sales business, or an automobile parts sales business which includes the open storage of wrecked or damaged automobiles, automobile parts, equipment and accessories on the East Parcel;

2) storing dismantled vehicles or parts outside of any building on the West Parcel and from leasing or renting all or part of said tract of land as a residence, home or sleeping quarters to any person or his family who is not employed by the defendants to act as a watchman, guard or attendant on said tract of land, and

3) obstructing the driveable portion of McGee Road or the flow thereof where it joins the North Service Road by a metal post.

On appeal the defendants contend that the trial court erred:

1) in enjoining their use of the East Parcel for automotive sales and storage and salvage of parts as being in violation of

the County Zoning Order of 1973 because they had established a non-conforming use and were not, therefore, required to obtain a conditional use permit;

2) in enjoining their use of the West Parcel for storing vehicles or parts outside buildings because such activities are accessory to such lawful uses of the West Parcel as public garages and storage of machinery; and

3) their use of these Parcels did not constitute a private nuisance.

In this court tried case the standards of review are those set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32[1, 2] (Mo. banc 1976), and the reviewing court reviews both the law and the evidence, giving due regard to the opportunity of the trial judge to evaluate the credibility of the witnesses. Rule 73.01(3); *McNeal v. Manchester Ins. & Indem. Co.*, 540 S.W.2d 113, 118[1] (Mo.App. 1976).

The judgment of the trial court, together with its findings of fact and conclusions of law, show that it is based on violations of Section 5 of the 1973 Revised Zoning Code of St. Charles County, and that no non-conforming use was established by the evidence.

The crux around which this case revolves is when the defendants commenced using these two Parcels for the purposes the trial court enjoined. The evidence on this issue includes both oral testimony and photographs; the latter portraying the property as it was in 1965, in 1971 (these being aerial photos), and at more recent times. The oral testimony adduced by the parties on this issue was in conflict.

### I. The East Parcel

■ Whether defendants' use of the East Parcel was a non-conforming use, i. e. "the lawful use of land or a building or a portion thereof, which use does not conform with the use regulations of the district in which it is located and which use existed at the time of the adoption of this Order," Section 2 Revised Zoning Order for St. Charles County, Missouri, 1973, is a question of fact, and the burden of proving the

right to maintain a non-conforming use is on the party seeking to continue said use. It is that party who must prove the essential elements of the right to maintain the use, including prior existence of the use, and denial of such use will be sustained where the evidence in support of such prior use is insufficient or contradictory. Anderson, American Law of Zoning, § 6.09, p. 327 (1968); *Bartholomew v. Board of Zoning Adjustment*, 307 S.W.2d 730, 733[7] (Mo. App.1957). See also *Kansas City v. Wilhoit*, 241 Mo.App. 280, 237 S.W.2d 919, 922[3] (1951).

■ The evidence of prior uses was inconsistent and contradictory, but there was substantial evidence supporting the trial court's findings that Goodfellow Auto Sales and Salvage Company began in 1966 to occasionally store auto parts and accessories on the East Parcel but that no substantial number of parts and accessories were stored there until sometime after January 4, 1973, and that the systematic disassembly, dismantling, wrecking and salvaging operations on this Parcel were not conducted until May, 1973. Plaintiffs' witnesses testified that they were unaware of use of this tract as a junkyard prior to 1973.

There was sufficient evidence from which the trial court could decide that the East Parcel was not the site of a systematic automobile salvage business prior to 1973. The parking of a few junked cars, incidental to the use of a tract of land for a gas station, has been held insufficient to establish a non-conforming use of a salvage yard. *Sohns v. Jensen*, 11 Wis.2d 449, 105 N.W.2d 818, 822[6] (1960). Here, there is evidence that prior to 1973 there was a small house on this Parcel which was used for the sale and storage of auto parts and accessories, but only a few salvaged autos were also present then. The use of a tract for "the overflow" from an auto salvage operation has been held to be a casual and incidental use insufficient to establish a principal use as a non-conforming auto salvage business. *Ashline v. Bristol Township Zoning Bd. of Adjustment*, 408 Pa. 245, 182 A.2d 531, 533[2, 3] (1962).

We hold that there was no error in the trial court's enjoining the continued use of the East Parcel for the operation of an automobile salvaging business, an automobile sales business, or an automobile sales business which includes the open storage of wrecked or damaged automobiles, automobile parts, equipment and accessories.

## II. *The West Parcel*

Defendants, in their brief, state that they do not wish to contest the trial court's decision with regard to the West Parcel "to the extent that it enjoins them from making any use of it which was not permitted in the district in which it was zoned in 1967, i. e. light industry, designated at (sic) M–1." They do contend, however, that because the evidence of both parties was to the effect that there has been an automobile repair garage on the West Parcel since 1967, the decree should be limited so as not to enjoin use of the West Parcel for a public garage and the storage of machinery and accessory uses customarily incident to such uses which were permissible in the M–1 District between 1967 and 1973.

Our reading of the judgment with respect to the West Parcel causes us to conclude that what the trial court did enjoin was the storage of automobile parts, equipment, and accessories *outside* of a building pursuant to the business conducted by Goodfellow Auto Sales and Salvage Company on said Parcel as being in violation of Section 5, M–1 Light Industrial District, of the 1973 Zoning Order. It did not enjoin defendants' operation of the automobile storage or repair business, so long as said automobile parts and equipment are not stored outside of any building used for said business.

As we comprehend defendants' argument, the storage of automobile parts, equipment and accessories outside the building in which they have been conducting their automobile repair business since 1967 is a reasonably necessary incident to the business of a public garage and therefore the storage of machinery on said premises should be exempt from the injunction.

A "public garage" is defined in the 1973 Zoning Order as "a *building or portion thereof*, designed or used for the storage, sale, hiring, care or repair of motor vehicles, which is open for commercial purposes." (Emphasis supplied). Section 2, 1973 Zoning Order, p. 7. The 1959 Zoning Order employed the same definition of the term, except it had the word "operated" rather than "opened" before the words "for commercial purposes." 1959 Zoning Order, Section 1, p. 5.

Both the 1959 Zoning Order and the 1973 Zoning Order defined the term "Accessory Building or Use" in these terms:

"A subordinate building having a use customarily incident to and located on the lot occupied by the main building; *or a use customarily incident to the main use of the property . . .*" (Emphasis supplied).

The operation of a public garage, a place for automobile repair or sales or storage, new or used, are uses allowed in the C–2 District, except that with respect to an auto repair business no dismantled vehicles or parts might be displayed or stored outside the building in which the business is operated. 1973 Zoning Order, p. 57, and 1959 Zoning Order, p. 33.

These uses aforesaid were also permitted in the M–1, Light Industrial District, 1973 Zoning Order, Section 5, p. 63 and 1959 Zoning Order, Section 14, pp. 41 and 42. Accessory uses customarily incident to any of these uses were also allowed.

Defendants candidly admit they have found no definition of accessory uses for a public garage nor for the storage of machinery. They rely, therefore, on a case wherein it was held that a business office was a proper accessory use to a nursery and that the conduct of a landscaping service and the sale of fungicides, insecticides, chemicals, peat moss, humus, mulches and fertilizers by the nursery was a legal accessory to said nursery business. *Suburbia Gardens Nursery, Inc. v. County of St. Louis*, 377 S.W.2d 266 (Mo. banc 1964).

The court in *Suburbia*, however, also held that the sale of drainage materials, edgings,

bricks, railroad ties, sand, gravel, crushed rock, and items of a similar nature, not being the product of a nursery, was not accessory or incidental to the nursery business as authorized by the zoning ordinance being enforced in that case.

■ In determining whether a use is an accessory or incidental use permitted on those grounds, the decision must be made on the basis of the wording of the particular ordinance and the context in which it occurs. *Suburbia Gardens Nursery, Inc. v. County of St. Louis,* supra, l. c. 272[5].

■ We hold that the trial court did not err in enjoining the storage, in the open, of automobile parts, equipment and accessories *outside* the public garage defendants operate on this West Parcel.

Defendants, caught on the horns of a dilemma, point out that the evidence by both sides "indicated" that there has been an "automobile repair garage" on the West Parcel since 1967; however, they then shift their ground, and seem to evade the restriction against the display or storage of dismantled vehicles or parts thereof imposed on a business for automobile repair.

Defendants argue further that this injunction should be so worded as to exempt any activity that is a "reasonable, necessary incident" to the storage of machinery. We believe that it is clear from a consideration of the wording of the Zoning Order that the County did not, either specifically nor by implication, authorize the open storage of dismantled automobile bodies nor parts as an accessory to the operation of a public garage. Of the various uses permitted in a C–1 District, only one business involving repair of machinery—the sale and repair of farm machinery—was not expressly prohibited from outside storage. Section 5, subsection C–2(g), 1973 Zoning Order, p. 55. The other repair operations permitted under subsection C–2(p), i. e. ". . . tire sales and service, upholstering and other general service or repair establishment(s) of similar character," may use only 10% of the lot or tract occupied by the business for the open and unenclosed storage of materials or

equipment. 1973 Zoning Order, p. 58. Although subsection C–2(b) authorizes the storage of automobiles, boats, trucks and trailers without any express restrictions as to outside storage, that subsection applies only to sale and storage and does not include dismantling and repair of same. Even under the less restrictive provisions of the M–1 District, those items which may be stored in the open include supplies and bulk items for sale and not the dismantling or repair of automobiles.

■ Nor is there any basis for a conclusion that the "storage of machinery" argument is any more valid under the 1959 Zoning Order. Under that Zoning Order the definition of a storage garage, like a public garage, refers to a building or a portion of a building. Sales and storage areas for automobiles, boats, trucks, and trailers are authorized provided there is no storage of dismantled vehicles and parts "outside the building." 1959 Zoning Ordinance, p. 33. Therefore, the storage of dismantled vehicles and parts thereof could not constitute an accessory or incidental use, and even if commenced prior to the enactment of the 1973 Zoning Order could not be the basis for a non-conforming use. Anderson, American Law of Zoning, supra, Section 6.12, p. 333.

Similar prohibitions and restrictions distinguishing between outdoor and indoor storage have been held to be a reasonable and not arbitrary exercise of the powers of a Zoning Authority. *N. Y. Central R.R. v. Ridgefield,* 84 N.J.Super. 85, 201 A.2d 67, 71[2, 7, 8] (1964).

We rule this Point against defendants.

■ Defendants' final Point is: "Defendants' use of their East and West Parcels did not constitute a private nuisance so as to entitle plaintiffs to an injunction." This abstract statement preserves nothing for review for the reason it fails to state wherein and why the action of the trial court's decree was erroneous. Rule 84.-04(d). We rule this Point against defendants.

The judgment of the trial court is affirmed.

GUNN, P. J., and WEIER, J., concur.

APPENDIX

*1973 Revised Zoning Order for St. Charles County, Missouri.*

SECTION 2—DEFINITIONS

For the purpose of this Order, the following words and terms used herein are defined to mean the following:

.  .  .  .  .

ACCESSORY BUILDING OR USE: A subordinate building having a use customarily incident to and located on the lot occupied by the main building; or a use customarily incident to the main use of the property. A building housing an accessory use is considered an integral part of the main building when it has any part of a wall in common with the main building, or is under an extension of the main roof and designed as an integral part of the main building. (p. 3)

.  .  .  .  .

CONDITIONAL USE: A use allowed in a zoning district after a permit is granted in accordance with the provisions of Section 11 of this Order. (p. 5).

.  .  .  .  .

GARAGE, PUBLIC: A building or portion thereof, designed or used for the storage, sale, hiring, care or repair of motor vehicles, which is open for commercial purposes. (p. 7)

NONCONFORMING USE: The lawful use of land or a building, or a portion thereof, which use does not conform with the use regulations of the district in which it is located and which use existed at the time of the adoption of this Order. (p. 10).

SECTION 5—DISTRICT REGULATIONS

M–1 LIGHT INDUSTRIAL DISTRICT

*Permissive Uses*

(a) Any permissive or conditional use of the C–2 District except dwellings, provided dwellings for, and to be occupied by, watchmen, guards, attendants and other personnel who customarily reside on the premises, shall be permitted on the premises of an industrial use permitted herein. (p. 63).

.  .  .  .  .

(k) Machine shops, electroplating, photo engraving, plumbing and sheet metal shops and similar processes. (p. 63)

.  .  .  .  .

(s) Accessory uses customarily incident to any of the above uses. (p. 64)

C–2 GENERAL COMMERCIAL DISTRICT

*Permissive Uses*

.  .  .  .  .

(c) Automobile service station and automobile repair, provided no dismantled vehicles or parts are displayed or stored outside the building. (p. 57)

(1) Public garage or parking lot. (p. 57)

.  .  .  .  .

(q) Accessory uses customarily incident to any of the above uses. (p. 57)

M–2 HEAVY INDUSTRIAL DISTRICT

*Permissive Uses*

Any use except the following conditional uses and except that no dwelling other than that for a resident watchman or caretaker employed on the premises shall be permitted.

*Conditional Uses*

.  .  .  .  .

(b) Automobile wrecking, cars and parts, storage and sale. (p. 65)

.  .  .  .  .

SECTION 9—NONCONFORMING USE REGULATIONS

*Nonconforming Use of Land.* In the residential districts where open land is being used as a nonconforming use, and such use is the principal use and not accessory to the main use conducted in a building, such use

shall be discontinued not later than 5 years from the date of passage of this Order. During the 5 year period such nonconforming use shall not be extended or enlarged, either on the same or adjoining property . . . Any nonconforming junk yard may be continued for a period of more than 5 years provided it is enclosed with an 8 foot high sight-proof fence. (p. 89)

. . . . .

*Conditional Uses Not Nonconforming.* Existing uses eligible for conditional use permits shall not be nonconforming uses, but shall require a conditional use permit for any alteration, enlargement or extension.

*Intermittent Use.* The casual, intermittent, temporary or illegal use of land or buildings shall not be sufficient to establish the existence of a nonconforming use and the existence of a nonconforming use on the part of a lot or tract shall not be construed to establish a nonconforming use on the entire lot or tract. (p. 90)

*Existence of a Nonconforming Use.* Whether a nonconforming use exists shall be a question of fact and shall be decided by the Board of Adjustment after public notice and hearing and in accordance with the rules of the Board. (p. 91)

. . . . .

*Nonconforming Use Due to Change in Zoning.* Whenever the use of a building becomes nonconforming through an amendment to the Zoning Order or Zoning District Map, such use may be continued and if no structural alterations are made, it may be changed to another nonconforming use of a higher classification.

*Nonconforming Use Enlarged.* A building or lot containing a nonconforming use may not be enlarged, extended, reconstructed or altered unless such use is made to conform to the regulations of the district in which it is located; provided, however, that in case of evident hardship a building containing a nonconforming use may be enlarged an amount not greater than 25 percent of its present ground floor area by variance from the Board of Adjustment after public hearing. (p. 91)

. . . . .

## SECTION 11—ADMINISTRATION

### A. *Conditional Uses*

Applications for conditional permits for uses specifically authorized for consideration in the district use regulations shall be made to the County Court. The County Court shall refer the application to the Planning and Zoning Commission for investigation and public hearing. A public hearing shall be held and a report and recommendation shall be filed by the Commission with the County Court within 90 days of the day of referral to the Commission. Following report by the Commission, the County Court shall review and decide upon the application.

Before authorizing the issuance of such a conditional use permit, the County Court may impose such conditions as will, in the County Court's judgment, insure that:

The establishment, maintenance, or operation of the conditional use will not be detrimental to or endanger the public health, safety, morals, comfort or general welfare.

The conditional use will not be injurious to the use and enjoyment of other property in the immediate vicinity for the purposes already permitted nor substantially diminish and impair property values within the neighborhood.

The establishment of the conditional use will not impede the normal and orderly development and improvement of surrounding property for uses permitted in the district.

Adequate utilities, access roads, drainage and/or other necessary facilities will be provided. (p. 97)

Adequate measures will be taken to provide ingress and egress so designed as to minimize traffic congestion in the public streets.

The conditional use shall in all other respects conform to the applicable regulations of the district in which it is located and the County Court shall find that there is a

public necessity for the conditional use. (p. 98)

*The 1959 Zoning Order of St. Charles County, Missouri*

SECTION 14. DISTRICT M–1. LIGHT INDUSTRIAL DISTRICT USE REGULATIONS

In District M–1 no building, structure, land or premises shall be used . . . except for one of the following uses: (. . .)

1. Any use permitted in District C–2 except dwellings, provided dwellings necessary for, and to be occupied by, watchmen . . ., shall be permitted on the premises of an industrial use permitted herein.

. . . . .

20. Garages, (public).

. . . . .

42. Accessory uses customarily incident to any of the above uses.
(1959 ZONING ORDER, pp. 41–43)

SECTION 15. DISTRICT M–2. HEAVY INDUSTRIAL DISTRICT USE REGULATIONS

In District M–2, no building, structure, land or premises shall be used . . . except for one or more of the following uses: (. . .)

1. Any use permitted in District M–1.

. . . . .

37. Salvage and junk yards, provided such yards shall be completely enclosed by a solid fence or wall not less than eight (8) feet high.

. . . . .

(1959 ZONING ORDER, pp. 44–46)

SECTION 16. NONCONFORMING USES

. . . . .

2. Non-Conforming Use Due to Change in Zoning. Whenever the use of a building becomes nonconforming through an amendment to the Zoning Order or Zoning District Map, such use may be continued . . .

. . . . .

(1959 ZONING ORDER, pp. 47–48)

*1959 Zoning Order of St. Charles County, Missouri as amended in 1967*

SECTION 15. DISTRICT M–2. HEAVY INDUSTRIAL USE REGULATIONS

. . . . .

37. (DELETED)

. . . . .

The following additional uses may be permitted after the location of such use shall have been approved by the County Court, after report by the County Engineer and the Planning and Zoning Commission: