STATE ex rel. NATIONAL ADVERTIS-
ING COMPANY, Appellant,

v.

STATE HIGHWAY COMMISSION of the
State of Missouri, Respondent.

No. WD 31684, WD 31685.

Missouri Court of Appeals,
Western District.

Sept. 8, 1981.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 20, 1981.
Application to Transfer Denied
Dec. 14, 1981.

454

W. R. England, III, Hawkins, Brydon & Swearengen, Jefferson City, for appellant.

Curtis Frank Thompson, Jefferson City, for respondent.

Before KENNEDY, P. J., SOMERVILLE, C. J., and SHANGLER, J.

SHANGLER, Judge.

The appeal consolidates decisions by the State Highway Commission [now the Missouri Highway and Transportation Commission] that the National Advertising Company remove without payment of compensation seven owned outdoor advertisement structures as in violation of the Billboards Law. The Commission found that the signs were installed after March 30, 1972—the operative date of the Billboards Law—and failed in particulars to conform to the strictures of that enactment. The circuit court affirmed the decisions of the Commission.

National Advertising poses a spate of objections to the decisions of the Commission, and we treat them according to common questions to the extent the congruence of the facts and the points of law on appeal allow.

The enactment of the Billboards Law [§§ 226.500 through 226.600, RSMo 1978] subjects outdoor advertisement structures installed within a prescribed proximity to a primary or interstate highway to the regulation and licensure of the State Highway Commission. The law enacts, among other provisions:

Section 226.520:

On and after March 30, 1972, *no outdoor advertising shall be erected or maintained within six hundred sixty feet of the nearest edge of the right-of-way and visible from the main traveled way of any highway* which is a part of the interstate or primary system in this state except the following: ·

\* \* \* \* \* \*

(3) Outdoor advertising located in areas which are zoned industrial, commercial or the like as provided in sections 226.500 to 226.600 or under other authority of law;

(4) Outdoor advertising located in unzoned commercial or industrial areas as defined and determined pursuant to sections 226.500 to 226.600 . . . .

Section 226.540:

Notwithstanding any other provisions of sections 226.500 to 226.600 outdoor advertising shall be permitted within six hundred and sixty feet of the nearest edge of the right-of-way of any interstate or primary highway in areas zoned industrial, commercial or the like and in unzoned

commercial and industrial areas as hereafter defined, subject to the following regulations which are consistent with customary use in this state:

\* \* \* \* \* \*

(3) Spacing of signs:

(a) Interstate highways and freeways on the federal-aid primary system:

a. *No sign structure shall be hereafter erected within five hundred feet of an existing sign on the same side of the highway*;

b. Outside of incorporated municipalities, no structure may be located adjacent to *or within five hundred feet of an interchange, intersection at grade,* or safety rest area. Said *five hundred feet shall be measured from the beginning or ending of the pavement widening at the exit from or entrance to the main traveled way.* For purpose of this subparagraph b the term "incorporated municipalities" shall include "urban areas," except that such "urban areas" shall not be considered "incorporated municipalities" if it is finally determined that such would have the effect of making Missouri be in noncompliance with the requirements of Title 23, United States Code, section 131.

\* \* \* \* \* \*

(4) As used herein, the words "unzoned commercial and industrial land" shall be defined as follows: That area not zoned by state or local law or ordinance and on which there is located one or more permanent structures used for a commercial business or industrial activity or on which a commercial or industrial activity is actually conducted whether or not a permanent structure is located thereon, *together with the area along the highway extending outwardly six hundred feet from and beyond the edge of such activity.* [Emphasis added]

The State Highway Commission issued formal notices under § 226.580 to National Advertising to remove seven outdoor advertisement signs as in violation of the several provisions of the Billboards Law. Pursuant to requests for administrative review of the notices, the State Highway Commission examiner conducted hearings. A decision was rendered separately as to each notice [sign][1] although the cases were combined, as convenience allowed, for the reception of the proof. The evidence consisted of stipulations, exhibits and the testimony of a permit inspector for the Commission. The final decision of the Commission in each case entered on findings of fact and conclusions of law, ordered the removal of the seven signs.

*Cases 78–04–349, 78–04–350, 78–04–351*

This triad of signs was installed on the east side of Interstate 435 between the Route 12 [Truman Road] crossover to the north and the Route 78 crossover to the south. The notices to remove the signs cited three incidences of illegality:

(1) each sign was erected after March 30, 1972 in violation of § 226.540.

(2) each sign was spaced within 500 feet of an existent sign in violation of § 226.540(3)(a)a

(3) each sign was located outside an incorporated municipality and within 500 feet of an interchange in violation of §§ 226.520(4) and 226.540(3)(a)b.[2]

---

**1.** The official administrative case designations were: 78–04–349, 78–04–350, 78–04–351; 74–04–050; 75–04–278 and 75–04–313; 77–04–337.

**2.** We interpolate citation of violation (2) to mean that each sign was within 500 feet of another sign, just as we interpolate citation of violation (3) to mean that each sign was located outside an incorporated municipality and within 500 feet of an interchange. We derive that sense from the evidence, the findings of fact and the conclusions of law entered upon decision of the Commission. The actual cita-

tions (2) and (3) in the formal Notice to Remove Outdoor Advertising describes those violations, merely:

(2) "spacing provisions of Sections 226.-540(3)," and

(3) "location provisions of Sections 226.520 and 226.540."

While reference to § 226.540(3)—recited as the statute violated in citation (2) of the No-

The notices recited also that removal of the signs was the only remedy possible to correct the unlawfulness—to comply with the requirement of § 226.580.3 that the notice specify the action necessary to allay the violations. Thus, the theory of the citations and of the Commission proof was that the three signs—349, 350, 351—were installed on or after March 30, 1972 [and so under the governance of the Billboards Law] and as erected were in violation of two separate enactment provisions: each sign was within 500 feet of another sign on the same side of the highway, and each sign—located outside an incorporated municipality—was within 500 feet of an interchange. The proof of *any* violation renders an outdoor advertisement sign within the governance of the Billboard Laws subject to removal. § 226.-580.1(1).

The Commission found as fact that the three signs were erected after March 30, 1972—not otherwise excepted from the operation of the law [§ 226.520]—were each within the prohibited space of 500 feet of an existent sign, and were each within the prohibited proximity of within 500 feet of an interchange outside of an unincorporat-

ed municipality.[3] The appeal contends that these findings are no more than statements of ultimate fact unsupported by a preface of basic facts found and so insufficient for judicial review, and in any event do not rest on substantial evidence.

 There was evidence by the Commission through permit inspector Bergschneider that the official inventory show that the three signs—349, 350, 351—were not in existence on March 30, 1972. National Advertising made proof of lease agreements with the landowner on July 14, 1969, for advertisement sign display and, thereafter, on November 3, 1971, obtained a permit from the City of Blue Summit[4] for the erection of the signs and, then, on February 25, 1976, obtained an order from the county Board of Zoning Adjustment to permit the maintenance of the signs [349, 350, 351] at those locations. This evidence constitutes a substantial basis for the Commission finding of fact that: "The signs [349, 350, 351] were erected after March 30, 1972." That finding was tantamount to a determination that whatever *de facto* validity the permit may have had on November 3, 1971 [then

tice—readily leads to sub-sub-subsection § 226.540(3)(a)a proscription against a sign within 500 feet of an existent sign—and hence the informed "basis for the alleged unlawfulness" required of a Notice by § 226.580.3—reference to the "location provisions of Sections 226.520 and 226.540" as the basis for the alleged unlawfulness of citation (3) of the Notice leads to a quandary. The Billboards Law is an intricate interrelationship of provisions and definitions. Each of the two statutes cited—§§ 226.520 and 226.540, among the component sections, subsections and subsubsections, encompasses numerous *location* enablements and disablements for outdoor advertisement structures, among them—zoning classifications and incorporated municipal status.

We surmise the violations intended were as we describe them—from the evidence, the concurrence of the litigants as to the proof and from the findings of fact and conclusions of law entered by the Commission upon decision.

3. The parties stipulated that each of the seven signs was located within 600 feet of the respective interstate highway and was visible from the main traveled way of that thoroughfare—two of the constituent predicates for Commission jurisdiction over an outdoor advertisement sign under § 226.520.

4. The permits of November 3, 1971, from Blue Summit issued under color of municipal authority. Thereafter, on November 18, 1971, the circuit court of Jackson County entered a judgment that the incorporation of Blue Summit was undertaken by the county court without jurisdiction, and was void. That adjudication, become final without appeal, brought to the notice of the hearing by a Commission exhibit, was a basis of the final decision. See *Blue Summit Landfill v. Jackson County*, 532 S.W.2d 484, 485 (Mo.App.1976).

The significance of the evidence of a permit on *November 3, 1971 from an incorporated municipality* is two fold: It not only tends to prove that the sign structures were installed before March 30, 1972, the effective date of the Billboards Law—so as to avoid the more stringent regulation by the Commission of sign structures not lawfully in existence on that date [§ 226.560 and § 226.550.2(1) & (2)], but also avoids the effect of alleged violation (3) of the Notice—the stricture against location of the signs within 500 feet of an interchange—which applies only to such structures "[o]utside of incorporated municipalities." § 226.540(3)(a)b.

issued under color of municipal authority] lapsed after November 18, 1971 [when the municipal incorporation was invalidated], and that National Advertising did not construct the signs before the legal effectiveness of the permit expired—on November 18, 1971. That ultimate determination of fact was supported by the further evidence that signs 349, 350, 351 did not appear on the March 30, 1972, official Commission inventory, and by the National Advertising initiative in year *1976* for a permit from the county authority to maintain the signs at those locations. The neglect by National Advertising to make late proof by affidavit from the construction company "erecting [the] signs which are the subjects of Hearings 349, 350 and 351, indicating the date or day upon which those signs were erected"— as voluntarily stipulated—allows the adverse inference that the signs were not in place by March 30, 1972—as found by the Commission decision. Contrary to contention, the lack of direct proof as to the actual dates of the sign construction does not impair the Commission decision. The statutory inquiry [as to the violations cited] is only whether the signs were in place on March 30, 1972, and not when they were installed. § 226.520 and § 226.540. National Advertising notes that the Commission dealt with a contested question of fact. Where the determination of ultimate fact rests on substantial evidence—as does the determination that the signs were erected after March 30, 1972—a court of review has no authority to reassess the disputed proof and impose that judgment on the administrative body. *Smith v. Missouri State Highway Commission*, 488 S.W.2d 230, 235[2] (Mo. App.1972).

■ National Advertising contends also that the finding: "The signs were erected after March 30, 1972" states the ultimate fact but neglects the basic facts from which that determination derives, and so impairs our function of review. However insufficient such a declaration of fact may be unaided, that finding rests on the predicate of other findings made expressly: "[A]lthough applicant did obtain building permits for the signs from Blue Summit, Missouri, on November 3, 1971 ... there is no evidence the signs were erected before the order of incorporation of the town of Blue Summit, Missouri was reversed by the Sixteenth Judicial Circuit Court's order of November 19, 1971." [5] These inferences, taken implicitly with the noncontested documentary proof of the contents of the inventory and the year 1976 county permit to locate those same signs, sufficiently inform a court of review of the basis of decision. Although a more sequential exposition of reasons, or even a more ample detail, would have more immediately disclosed the syllogism of decision, the findings of fact need only constitute "a concise statement of the findings on which the agency bases its order" [§ 536.090; *Iron County v. State Tax Commission*, 480 S.W.2d 65, 71[4] (Mo. 1972)]. The adequacy of findings of fact, within the prescription of § 536.090 for a concise statement of the determinations on which the agency order rests and the desiderata of the Model State Administrative Procedure Act [*Stephen & Stephen Properties, Inc. v. State Tax Commission*, 499 S.W.2d 798, 804[8, 9] (Mo.1973)], depends upon the circumstance of the case. *Glasnapp v. State Banking Board*, 545 S.W.2d 382, 387 (Mo.App.1976). The administrative adjudication of the three citations of violations as to signs 349, 350, 351, involved a cluster of facts common to the proof of each. The method chosen by the Commission to express the findings of fact, a spare statement of ultimate fact but referable to a more detailed narrative of basic facts determined, avoids repetition and suits the particular circumstances.

5. The Commission also found: "[T]he signs are not located in an area zoned for commercial, industrial or like use ...." That finding was based on evidence that the site was zoned "Second Dwelling House." The effect of that finding was to determine that the signs were not excepted—by virtue of commercial or industrial use—from Highway Commission regulation under § 226.520 of any outdoor advertisement sign erected or maintained on or after March 30, 1972, within 660 feet of a highway right-of-way. The parties stipulated that, in fact, signs 349, 350, 351 were located within 660 feet of the I-435 right-of-way.

■ The Commission also found citation (2) against National Advertising: "The signs [349, 350, 351] are located within 500 feet of an existing sign" in violation of § 226.540(3)(a)a: "No sign structure shall be hereafter erected within five hundred feet of an existing sign on the same side of the highway." National Advertising iterates the contention that the statement of fact upon which the legal determination of illegally-spaced signs rests recites an ultimate fact merely without reference to the basic evidence from which it derives. The evidence on that citation of violation, however, was not contested. That the signs were located within 660 feet of the highway right-of-way and visible from that traveled way, was conceded, as was the placement on the same side of I–435. The testimony by permit inspector Bergschneider that sign 349 was located 430 feet south of sign 350, and that sign 350 was located 320 feet south of sign 351 was not disputed. That evidence proved the issue and a finding of fact enhanced to recite that the determination rested on the uncontested measurements of the permit inspector witness would have been a superfluity. National Advertising argues that the proof of the violation was not complete without evidence as to the sequence in which the signs were installed. The evidence as found [we noted] was that *all three signs* were erected after March 30, 1972. Section 226.540(3)(a)a prohibits from that date the installation of one sign within 500 feet of another on the same side of the highway. The proscription is spatial, not temporal. The three signs have been in unlawful proximity to another sign after March 30, 1972, and so violate that proscription. The contention is without merit.

■ We note the further argument that whatever unlawfulness resulted from the spaces between signs 349, 350, 351, may be corrected by the removal of the middle sign 350, a remedy less drastic than the removal of all three. In each case, the Notice To Remove Outdoor Advertising by the District Engineer to National Advertising recited that the "[r]emoval of the sign is the only remedial action possible under Sections 226.500 to 226.600." The statute which governs the notice procedure [§ 226.-580.3] provides that *the notice*

> *shall specify the remedial action which is required to correct the unlawfulness* and shall advise that a failure to take the remedial action within thirty days will result in the sign being removed. Within thirty days after receipt of the notice as to him, the owner of the land or of the structure may take the remedial action specified or may file an action for administrative review .... [Emphasis added]

Thus, the statute directs removal as the alternative to a remedial action prescribed by the Commission, but unheeded by the owner.[6] The option to the owner to correct the unlawfulness before the sanction of removal is imposed, however, applies only when the unlawfulness can be corrected so as to qualify the sign for licensure under § 226.500 and 7 CSR 10–6.070—that is, as a *structure lawfully in existence.* The express § 226.550.2(3) deems as lawfully in existence "[a]ll signs erected after March 30, 1972, which are in conformity with sections 226.500 to 226.600." The three signs— 349, 350, 351—installed after March 30, 1972, violated the space provisions of the Billboards Law. These juxtapositions were unlawful and, as found, were not conformable to the Billboards Law and hence not "structure[s] lawfully in existence" [§ 226.-550.2] subject to licensure. Signs erected contrary to the size, space, light and location requirements of the Billboards Law are not *structures lawfully in existence. National Advertising Company v. State Highway Commission*, 549 S.W.2d 536, 541[5] (Mo.App.1977). Furthermore, the signs were erected without authority of prior permit after the effective date of the law and so were unlawful at inception. §§ 226.550.1 and 226.580.1(1); 7 CSR 10–6.070(2), (3) and

---

**6.** The regulations promulgated by the Commission [7 CSR 10–6.080] under authority of §§ 226.500 and 226.530 to administer the Billboards Law, conformably to the sense of the statute, allow the District Engineer to withdraw the notice "where the basis of unlawfulness has been corrected or ceased to exist."

**460**

(4). A principal purpose of the Billboards Law is to remove unlawful signs. *State ex rel. State Highway Commission v. Heil*, 597 S.W.2d 257, 259 [1–5] (Mo.App.1980). The order by the Commission to remove signs 349, 350, 351, without compensation to the owner rests on substantial evidence and on a valid application of the law.

National Advertising complains also that the Commission order to remove signs 349, 350, 351, as in violation of the prohibition of § 226.540(3)(a)b against location of a sign structure outside an incorporated municipality within 500 feet of an interchange [citation (3)] was invalid for a number of reasons. We do not reach the merits of that contention because the order by the Commission that the signs be removed for the space violation provides a sufficient basis for decision.

### Case 74–04–050

■ This outdoor advertisement sign was owned by National Advertising and maintained adjacently to I–29 within the municipal corporate bounds of Kansas City. The notice to remove the signs cited that

(1) [t]he sign was erected after March 30, 1972 contrary to the location provisions of Sections 226.520 and 226.540, [and]

(2) [z]oning [7]

The case was submitted on the stipulated evidence that:

Sign 050 is located within 660 feet from the right-of-way of I–29 and is visible from the main traveled way of that interstate thoroughfare. The location of sign 050 is not zoned commercial or industrial. The official Commission inventory as of March 30, 1972, does not show an existent sign at the location of sign 050.

On August 18, 1964, National Advertising entered a lease agreement with the owner of the premises to erect an advertisement sign at the location. On November 10, 1964, National Advertising contracted for construction of a sign at the location. A sign, 18 feet by 20 feet was installed. A photograph [Exhibit 1G] taken of the site on April 26, 1972, shows no sign, only a solitary pole. Another photograph [Exhibit 1D] taken of the site on June 14, 1978, shows a commercial advertisement sign in place.

On this evidence, the Commission found that sign 050 was erected on the site [an area not zoned for commercial or industrial use] after March 30, 1972, and as located [within 660 feet of a highway and visible from that way] was unlawful, and ordered removal.

■ National Advertising cavils once again that the finding of fact by the Commission: "The sign [050] was erected at this location after March 30, 1972" declares only an ultimate fact, without predicate in basic facts found and declared, and so does not suffice for the administrative decision. The contention is both incorrect as well as anomalous. The *entire* case was given to the administrative examiner on stipulated evidence. The parties expressly reserved to themselves only the prerogative "to assert legal contentions based thereon [the stipulated record]." Final decisions of the State Highway Commission by § 226.580 of the Billboards Law are made subject to judicial review under the Administrative and Procedure Act [Chapter 536]. The usual requirement that findings of fact and conclusions of law accompany the administrative decision in a contested case as incident to judicial review does not apply in a case "disposed of by stipulation." § 536.090. In such a case, the facts as agreed upon suffice for judicial review [Rule 100.06; *State Board of Reg. for the Healing Arts v. Mas-*

---

**7.** The citation in the notice does not specify which "zoning" component of the Billboards Law was infracted. We assume from the stipulated evidence and the issue as joined, that the "location" infraction cited was the installation of a sign structure within 660 feet of a highway right-of-way after March 30, 1972. The conclusions of law [challenged only generally here] which declare the decision make the description of violations no clearer. There was no evidence of a zoning violation. The correctness of the conclusions of law as predicates for administrative decision, in any event, is for the independent judgment of the court of review. *State Board of Reg. for Healing Arts v. Masters*, 512 S.W.2d 150, 157[1, 3] (Mo.App.1974).

ters, supra, 512 S.W.2d 150, 158[4] (Mo.App. 1974) ], and review entails application of the law to the facts. *M.V. Marine Co. v. State Tax Commission*, 606 S.W.2d 644, 647[1, 2] (Mo. banc 1980).

National Advertising raises two questions of law: (1) that the inference of fact by the Commission that "[t]he sign [050] was erected at this location after March 30, 1972" is not legitimate and (2) that even if probative of the evidence, the present sign constitutes a lawful continuation of a nonconforming use.

■ The stipulated evidence was that the official inventory record of the Commission disclosed no sign at site 050 on March 30, 1972. The photographic evidence was that no sign—but only a solitary support pole—occupied that site on April 26, 1972, twenty-six days after the inventory. The evidence shows without doubt that a National Advertising sign was installed after August 18, 1964, and that the company records show that in year 1974 panels were replaced on an existent sign at that site. From this evidence, the Commission could legitimately infer that although *a sign* was erected after August of 1964 and then *another sign* reerected at the site in year 1974, none was in place on March 30, 1972, nor during the twenty-seven days thereafter. In a word, the evidence is probative that on the operative date of the statute sign 050 was not an existent outdoor advertisement structure, so that the year 1974 sign construction was unlawful as an installation proscribed by the Billboards Law. § 226.-520.

■ The contention by National Advertising that reerected sign 050 was, in any event, a lawful continuation of a nonconforming use is a proposition for the proponent to prove. *Schaefer v. Neumann*, 561 S.W.2d 416, 422[1, 2] (Mo.App.1978). The question is in each case one of fact [*Bartholomew v. Board of Zoning Adjustment*, 307 S.W.2d 730, 733[7] (Mo.App.1957) ] and denial of such use will be sustained where the evidence of the prior use is doubtful. *Schaefer v. Neumann,* supra, l. c. 422. National Advertising argues the effect of the

stipulated evidence to show that sign 050 represents no more than a replacement of the panels. That may be a plausible inference from the stipulated evidence, but not the inevitable inference. The foreign precedents National Advertising cites are not germane to discussion because of the distinctions between the statutory references. The Billboards Law [§ 226.550] accords lawful status to any outdoor sign structure "lawfully in existence on the day prior to March 30, 1972" [the effective date of this act]. The sign 050—the Commission determined by legitimate inference—was not *lawfully in existence* on that date and so was subject to removal.

### Case 75–04–278

■ This outdoor sign [278] was owned by National Advertising and maintained adjacently to I–70 within Jackson County in an area zoned for agricultural use [hence not excepted from the Commission jurisdiction by commercial or industrial zone or use]. The sign is located within 660 feet of the highway right-of-way and is visible from the main traveled way of the thoroughfare. The notice to remove the sign cited that the advertisement structure was erected after March 30, 1972, contrary to the location provisions of §§ 226.520 and 226.540—that is, within 660 feet of the highway. The Commission sustained the citation and ordered removal of sign 278.

The case was submitted on stipulated facts and exhibits. That evidence included a lease agreement dated November 1, 1965, for a sign at the site by National Advertising, a work order for construction of a sign at the location on December 18, 1965, and a subsequent work order by National Advertising for construction of sign 278 at the site on May 5, 1973. The sign [278] as installed advertises a commercial venture.

National Advertising contends that the Commission finding of fact: "Applicant erected the sign after May 5, 1973," postulates neither a sufficient factual basis for judicial review nor rests on substantial evidence. This case, as with sign 050, was

submitted to the Commission on stipulated evidence, therefore the facts are not in dispute and findings do not precondition judicial review. This appeal, as with sign 050, involves a question of law, simply: whether the evidence is probative of the inference drawn by the Commission—that sign 278 was erected after May 5, 1973. If so, then as a new installation after March 30, 1972, the sign was unlawful as sited within 660 feet of I–70 [and not otherwise excepted from the permit requirements of the Billboards Law] in violation of §§ 226.520 and 226.540.

The validity of the Commission determination that sign 278 was a new construction rests altogether on the work order of National Advertising for construction of two signs on May 5, 1972, one of them sign 278. The purchase order [dated December 8, 1972] described the display devised for each panel and specified May 5, 1973, as the erection date for the signs. The work order contains these other narratives:

Special Instructions:
Manufacture two complete signs
per attached art work

CANCEL CONOCO AND PRM SIGN

Additional Work
Pull PRM panels – Pull Conoco panels
4–25′ poles and 4–25′ poles and
install new sign install new sign
[Emphasis added]

This evidence allows the inference that sign 278 was a new construction after March 30, 1972, and so in violation of the several provisions of the Billboards Law.

■ National Advertising contends that the reasonable inference from the evidence is that sign 278 was not a new erection but represented only the replacement and installation of new panels.[8] The prohibition of the statute [§ 226.520] is that "[o]n or

after March 30, 1972, no outdoor advertising shall be erected or maintained within six hundred sixty feet ...." and other statutory compliances. Such a sign "erected after March 30, 1972, contrary to the provisions of the [Billboards Law] is subject to removal. § 226.580. The regulations of the Commission [7 CSR 10–6.015(7)] defines *erect* to mean:

to construct, build, raise, *assemble place, affix, attach,* create, paint, draw or in any other way bring into being or establish. [Emphasis added]

The regulation [7 CSR 10–6.080(2)(a)] which implements removal of unlawful signs § 226.580 defines *unlawful signs* as those

erected after March 30, 1972 contrary to the provisions of [the Billboards Law] which means all signs erected, relocated or *reconstructed* after March 30, 1972, in violation of the then effective sizing, lighting, spacing and location requirements of [the Billboards Law]. [Emphasis added]

Thus, to assemble, place, affix, attach or reconstruct constitutes to erect, and encompasses *to replace*—as National Advertising describes the May 5, 1973, sign 278 work activity. The question posed is only whether the evidence allows inference that sign 278 was erected after March 30, 1972. It does.

■ National Advertising argues, alternatively, that at the least sign 278 represents a nonconforming use, the continuation of a lawful outdoor advertisement use since 1965, and thus is a "structure lawfully in existence" under § 226.550.2. The burden to prove nonconforming use rests on National Advertising.[9] There was no evidence the original sign of December 18, 1965, was a lawful construction in compliance with the size, space, light and location require-

---

**8.** We assume for opinion that the work requisition orders only panels as National Advertising argues—although that remains far from clear from the exhibit face. We note that the work order includes a requisition for at least one new pole and that the *Additional Work* entry directs that all the poles be pulled.

**9.** Regulation 7 CSR 10–6.015(14) defines *nonconforming sign* to mean:

a sign which was lawfully erected but which does not conform to the requirements of state statutes enacted at a later date or which later fails to comply with state statutes due to changed conditions.

ments of the extant law [§ 226.550.2(2)], the requisite proof for the continued lawful existence of a sign erected before the effective date of the Billboards Law.[10] The decision of the Commission to remove sign 278 as unlawful rests on substantial evidence.

### Case 77–04–337

 This outdoor advertisement sign [337] was owned by National Advertising and maintained on land zoned for industrial use near I–435 and adjacently to I–35. The sign is located within 660 feet of the I–35 right-of-way and is visible from the traveled way of that thoroughfare. The notice to remove the signs cited that the sign was maintained without permit in violation of § 226.550, was erected on or after March 30, 1972, and violated the space requirements [of § 226.540]. The case was submitted on stipulated evidence. The facts conceded are, among the others, that the National Advertising records show a sign erected at this site in year 1966 with dimensions of 10 feet by 40 feet—a sign subsequently destroyed by the elements. On March 29, 1977, National Advertising made application to the Village of Claycomo to erect the subject sign. The Commission records show that a new sign structure was erected at the same location in March of 1977 with dimensions of 48 feet by 14 feet. That new sign [337] is located within 500 feet of an existent outdoor advertisement structure not licensed by the Commission.

The Commission found that sign 337 was a new construction [erected after March 30, 1972, id est, in March of 1977] and so [despite the industrial use location] subject to the space requirements of § 226.540. The Commission decided that the sign, located

within 500 feet of an existent sign not licensed by the Commission, violated § 226.-540(3)(a)a and ordered removal. The proximity of sign 337 within 500 feet of an existent sign was a stipulated fact. National Advertising does not argue actually that sign 337 was not a new construction—the stipulated evidence requires that fact conclusively. National Advertising argues [as for signs 050 and 278] that the March 1977 construction of sign 337 represents a nonconforming use of a *location used* continuously for outdoor advertisement purposes since year 1966. That argument fails. The early 1966 sign erection was destroyed by the elements—a stipulated fact. The Billboards Act accords nonconforming status to a *sign in being* [a structure lawfully in existence] at the time of the enactment, *not to a location*, as the argument goes. § 226.550.2 Nor does the evidence allow inference that sign 337, rather than the location, was merely a continuation of a nonconforming use. There was no proven fact that the original sign was *lawful* as erected—a proof which precedes any status of continued lawful existence under § 226.-550.2 and 7 CSR 10–6.015(14). The successor sign [337], in any event, was an infraction of the Commission criteria for the maintenance of nonconforming signs and relinquished whatever such status that structure otherwise acquired. Commission regulation 7 CSR 10–6.060(3) provides:

> Criteria for Maintenance of Nonconforming Signs Reasonable maintenance and repair of nonconforming signs is permissible. However, violation of any one or more of the following subsections (A) to (E) of this section (3) disqualifies any sign from being maintained as a nonconforming sign and

---

10. Regulation 7 CSR 10–6.060, *Nonconforming Signs*, prescribes the explicit standards for the continued nonconforming status of a sign. Subsection (3) of the rule, among other strictures as to size, materials, etc., limits the repair of a nonconforming sign to an expenditure of no more than (3)(D): "60 percent of the depreciated value of the sign in place for materials and labor ... in any continuous twelve-month period after the date the sign becomes a nonconforming sign ... Either relocation or repair of a nonconforming sign *beyond the 60*

*percent limitation for any reason whatsoever, is a new erection* as of the date the relocation or repair is completed." [Emphasis added]

We do not mean to say that National Advertising was obliged to prove that not more than 60% of the value of sign 278 was replaced to prove the contention of nonconforming use. The citation does not allege the violation of nonconforming use. We cite the rule only as further emphasis of the strict rationale of the Billboards Law and the Commission regulations which administer its purpose.

subjects it to removal by the State Highway Commission without the payment of just compensation.

\* \* \* \* \* \*

(C) The size or area of a sign shall not be increased or decreased after the date the sign becomes a nonconforming sign.

The original sign was 40 feet by 10 feet. The successor sign 337 is 48 feet by 14 feet. That enhancement of sign area violated the standards of the regulation and rendered the structure unlawful and subject to removal without compensation.

■ National Advertising contends also that the sign 337 proceeding was invalid for want of proper notice: that § 226.580.3 requires as a jurisdictional element that the formal Notice to Remove Outdoor Advertising specify the unlawfulness, specify the remedial action required for correction, and advise that failure to make the remedy within thirty days will result in removal of the sign.

The sign 337 Notice to National Advertising specified two grounds of illegality: (1) maintenance of the sign without a permit (2) violation of the space requirement. The terms of the Billboards Law provide clearly that where the unlawfulness of an outdoor advertisement sign consists solely in the failure of a permit, the owner must be given opportunity to correct that defect before the sign may be removed. §§ 226.550.2 and 226.580.3. *National Advertising Company v. State Highway Commission*, 549 S.W.2d 536, 539[1] (Mo.App.1977). Thus, notice to remedy prior to removal applies only when remedy is possible—that is, as to a sign otherwise *lawfully in existence.*[11] The Notice by the Director to National Advertising, however, states two grounds of illegality—one of them, the space violation, renders sign 337 unlawful and so ineligible for permit. The decision by the Commission on the stipulated evidence found that sign 337 was erected after March 30, 1972, within 500 feet of another sign, within 660 feet of the highway right-of-way and visi-

ble from that traveled thoroughfare. The remedy for such an illegality, once found, is removal of the sign. The citation in the Notice that National Advertising maintains sign 337 without permit is superseded by the citation, proof and decision by the Commission of the space violation. The option to correct under § 226.580.3 was not open to the owner of sign 337.

■ The sign 337 Notice presents another anomaly. The date of the Notice is November 16, *1976.* The receipt of the Notice by the owner is dated November 18, *1976.* The stipulated evidence, however, relates to a sign [337] erected in March of *1977.* Whatever the implications of that curiosity otherwise, the owner undertook the litigation of case 337 without objection, entered the stipulation of the 1977 evidence as relevant to decision, confronted the citations of violation without prejudicial result, and had administrative review. Whatever deficiency the Notice posed was waived. See *Hen House Interstate, Inc. v. State Highway Commission*, 604 S.W.2d 821 (Mo. App.1980). The decision by the Commission to remove sign 337 as in violation of the space provision of § 226.540(3)(a)a rests on substantial evidence.

### Case 75–04–313

■ This outdoor sign [313] was owned by National Advertising and maintained adjacently to I–70 within Kansas City in an area zoned for industrial use. The sign is located within 660 feet from the highway right-of-way and is visible from the main traveled thoroughfare. The sign erected after March 30, 1972, is within 500 feet of an existent outdoor advertisement structure. These are the stipulated facts. The notice to remove the sign by the Director to National Advertising cited the violation as a "sign erected on or after March 30, 1972 ... within 500 feet of a previously erected legal sign." The substance of the citation was not disputed—in fact, the stipulated evidence allows no other conclusion than the structure [313] violates the space restriction of § 226.540(3)(a)a. National Ad-

---

**11.** See our discussion of the point in the exposition of signs 349, 350, 351 and footnote 6, all supra.

vertising contends, merely, that § 226.580.3 entitles the owner of an unlawful sign option to correct the irregularity before resort to removal of the structure, and that the statute requires—as a jurisdictional requisite to validity—that the notice describe an alternative remedy and the time for compliance. We met that contention in the discussion of signs 349, 350, 351 and sign 337. We iterate: the alternative remedy notice and procedure of § 226.580 applies where the owner of a sign structure, otherwise lawful, neglects to obtain a permit. The sign 337 installed after March 30, 1972, within 500 feet of an existent sign violates the space provision of § 226.540(3)(a)a and so does not qualify for a permit, cannot be validated by permit, nor can that unlawfulness be remedied except by removal. § 226.580.1(1).

The decision by the Commission to remove sign 337 as in violation of the space provision of § 226.540(3)(a)a rests on substantial evidence.

The judgments of the circuit court as to Case Nos. 78–04–349, 78–04–350, 78–04–351, 74–04–050, 75–04–278, 77–04–337 and 75–04–313 are affirmed.

All concur.